Gaston, J.
 

 The first opinion, in the Court below, to which exception has been taken, is the rejection as evidence of the last clause of the deposition of John Beard, wherein the deponent stated “ that he was impressed with the belief that, as to her mental faculties, Mary Clary was in the state called childish.” To understand the import of this fact of the deposition, it must be taken in connection with what precedes it. The substance of the entire deposition is, that the witness had no acquaintance with Mary Clary, other than such as resulted from one occurrence; that about the year 1826, eleven years before the-execution of the deed in dispute, he visited her at Daniel Clary’s house, in consequence of a message from said Daniel, and for the purpose of writing her will; that he received her directions with respect to the disposition of her property, and wrote the will according to these directions; that he did not attest the will, but left it to be attested by others; that at this time she appeared to him to be in good health, but he thought her intellect in the state usually termed childish. The objection to the rejected part of the depo
 
 *80
 
 sition was, for that it gives the
 
 opinion
 
 of the witness upon the state of Mary Clary’s mind.
 

 It is certainly the general rule that witnesses shall be examined as to facts, whereof they have personal knowledge, and not as to those, in regard to which they have no personal knowledge, but have only formed an opinou or belief. But this rule necessarily admits of exceptions. There are facts, which from their nature exclude all direct positive proof, because they are imperceptible by the senses, and ol these no proof can be had except such as is mediated’ indirect. No man can testify, as of a fact within his knowledge, to the sanity or insanity of another. Such a question, when it arises, must be determined by other than direct proof. The precise enquiry then is, must the evidence be restricted to the proof of other facts, coming within the knowledge of the witnesses, and from which the Jury may draw an inference of sanity or insanity — -or may the judgment and belief of the witnesses, founded on opportunities of personal observation, be also laid before the Jury, to aid theta in forming a correct conclusion. We understand that this is a matter, on which different Judges have ruled differently 5n the circuits, and it is important that a uniform rule should be settled in regard to it. The point was not determined in
 
 Crowell
 
 v Kirk, 3 Dev. 355. Nor are we aware of any
 
 direct
 
 and authoritative decision, which supersedes the necessity of recurring to general principles and legal
 
 analogies
 
 to
 
 ascertain what is
 
 right.
 

 in the first place, it seems
 
 to
 
 us that the .restriction of the^ evidence to asimple narration of facts, having or supposed to have a bearing on the question of capacity, would, if practicable, shut out the ordinary means of obtaining truth ; and, if freed from this objection, cannot in practice be effectually enforced. The sanity or insanity of an individual may be a matter notorious and without doubt in a neighborhood, and", yet few, if any, of the neighbors may be able to lay before the Jury
 
 distinct fads,
 
 that would enable them to pronounce a decision thereon with reasonable assurance of its truth. If the witness may be permitted to state that he has known the individual for many years ; has repeatedly conversed with
 
 *81
 
 i hita and heard others converse with him : that the witness had noticed that in these conversations he was incoherent and silly ; that in his habits he was occasionally highly pleased and greatly vexed without a cause; and that in his conduct he was wild, irrational, extravagant, and crazy; what would this be but to declare the judgment or opinion of the witness of what is incoherent or foolish in conversation what reasonable cause of pleasure or resentment — and what the indicia of sound or disordered intellect ? If he may noty so testify, but must give the supposed silly or incoherent lan- \ ;guage, state the degrees and all the accompanying circum- ; stances of highly excited emotion, and specifically set forth ' the freaks or acts, regarded as irrational, and this without the least intimation of any opinion, which he has formed of their character — where are such witnesses to be found
 
 1
 
 Can it be supposed, that those not having a special interest in the subject shall have so charged their memories with those matters, as distinct, independent facts, as to be able to present them in their entirety and simplicity to the Jury
 
 ?
 
 Or if such a witness be found, can he conceal from the Jury the
 
 impression,
 
 which has been made upon his own mind ; and when this is collected, can it be doubted, but that his judgment has been influenced by many, very many, circumstances, which he has not communicated, which he cannot communicate, a tul ¡of which he is himself not aware ?
 

 We also think that there is an analogy in the investigation of questions of this kind and in the investigation of other' questions, wherein positive and direct evidence is unattainable, and in which the rule of evidence is well established. Of this kind are questions of personal identity and hand-writing. Mere opinion as such is not admissible. But where it is shewn that the witness has had an opportunity of observing the
 
 character
 
 of the person or the hand-writing, which is sought to be identified, then his judgment or belief,
 
 framed upon stick observation,
 
 is evidence for the consideration of the Jury; and it is for them to give to this evidence that weight, which the intelligence of the witness, his means of observation, and all the other circumstances attending his testimony, may in their judgment deserve. And why is
 
 *82
 
 this, but because it is impossible for the witness to specify and detail to the Jury all the minute circumstances, by which his own judgment was determined, so as to enable them by inference from these to form their judgment there-omf^And so it is in regard to questions respecting the'
 
 temper,
 
 in which words have been spoken or acts done. "Were they said or done kindly or rudely — in good humor or in anger — in jest or in earnest? What answer can be given to these enquiries, if the observer is not permitted to state his impression or belief? Must a
 
 facsimile
 
 be attempted
 
 j
 
 v r j so as to bring before the Jury the very tone, look, gestures and manner, and let them collect thereupon the disposition of the speaker or agent?
 

 In the Ecclesiastical Courts, where questions of sanity and insanity in cases of wills are of frequent occurrence, the practice is to interpose allegations, and admit these allegation': to proof, that the general appearance, manners, conduct and «deportment of the testator denoted unsound intellect^that EeT"C was treated and regarded- by his friends and acquaintances as ' one not in his right senses — and on the other hand to receive pleas, and of consequence proofs, that he was regarded by hi's friends and acquaintances as sane — that he was engaged in acts- of business, which he conducted without suspicion of unsoundness — and that his general deportment was rational and proper. See
 
 Wheeler v. Bé$fford ami Aider-son,
 
 3 Haggaíí 5741 In this case it was stated by Sir John Nicholl, in pronouncing his judgment, “there is a cloud of witnesses who gave unhesitating opinions that the deceased was mad.” He declared, indeed, upon a consideration of all the circumstances of the case “their opinions are of little weight,” but he did not reject them as inadmissible nor remark upon them as contrary to the course of the Court. See also the testimony received in the case of
 
 Engleton and Coventry
 
 v
 
 Hingston,
 
 8 Ves. 449.
 

 It is a well known exception to the general rule requiring witnesses to testify facts and not opinions,'that in matters involving questions of science, art, trade or the like, persons of skill may speak not only- to facts, but give their opinions in evidence. It is insisted that by the terms of this exception,
 
 *83
 
 persons not claiming to possess peculiar skill — and all persons upon matters not requiring peculiar skill are excluded from giving opinions. Certainly the testimony rejected in this case cannot claim to be admitted under this exception, and, as we understand the exception, it does exclude
 
 mereopin-ion
 
 in all cases other than those which are embraced within it. Professional men are allowed to testify to the principles and rules of the science, art or employment in which they are especially skilled, as general practical truths, or
 
 facts
 
 ascertained by long study and experience; and also may pronounce their opinion as to the application of these general facts to the special circumstances of the matter under investigation, whether these circumstances have fallen under their own observation or have been given in evidence by others.
 

 The Jury being drawn from the body of their fellow-citizens are presumed to have the intelligence, which belongs to men of good sense, but are not supposed-to possess professional skill, and, therefore, in matters requiring the exercise of this skill, are permitted to obtain what is neededfrom those who have it, and who are sworn to communicate it fairly. Thus shipmasters have been allowed to state their opinions on the seaworthiness of a ship from a survey which had been taken by others; physicians to pronounce upon the effect of a wound which they have not seen; and painters and statua-ries to give their opinion whether a painting or statue be an original or copy, although they have no knowledge by whom it was made. This is mere opinion, although the opinion of skilful men. This, none but professional men are per-mited to give in matters involving peculiar skill, and none whatever are allowed to give in matters not thus involving skill; because, with this exception, the Jury are equally competent to form an opinion as the witnesses, and, with this exception, their judgment ought to be founded on their own unbiassed opinion. But judgment founded on actual observation of the capacity, disposition, temper, character, peculiarities of habit, form, features or hand-writing of others, is more than mere opinion. It approaches to knowledge, and
 
 is
 
 knowledge, so far as the imperfection of human nature
 
 *84
 
 vvill permit knowledge of these things to be acquired, and the result thus acquired should be communicated to the Jury, because they have not had the opportunities of personal observation, and because in no other way can they effectually have the benefit of the knowledge gained by- the observations of others.
 

 It has also been insisted that there is a difference between the attesting witnesses to an instrument and other witnesses, as to their competency to express an opinion upon the capacity .of the maker. Wherever such a difference has been
 
 intimated,
 
 it seems confined to cases of wills, in which it is !said, that
 
 “
 
 the testator is entrusted
 
 to
 
 the care of the attesting witnesses — that it is their business to inspect and judge of the testator’s sanity before they attest — that in other cases witnesses are passive, here they are active, and principal parties to the transaction.” Now we can readily conceive why,
 
 -prima facie,
 
 it shall be presumed that witnesses thus engaged are more observant than others on
 
 whom the duty
 
 of observation has not been thrown, and also'the propriety of the
 
 rule, which obtains on the
 
 trials of an issue of
 
 devisa-vit vel non,
 
 that all the attesting witnesses, if to be had, shall be produced and examined before the Jury. But we do not see, (and without sufficient reason or clear authority for such a distinction we cannot admit it) why the judgment of any witness actually founded upon such observation, shall not be received in evidence. It is conceded that the attesting witnesses may express an opinion upon the testator’s capacity, because as the law has made it their duty to inspect the testator’s capacity, the law presumes that they did observe and judge of it. If observation presumed bé a sufficient ground for receiving in evidence the judgment of a witness, supposed to be thereupon formed, it is not readily conceivable that actual observation is an insufficient ground to war. rant respect for the judgment
 
 of
 
 a witness, in fact formed upon it.
 

 It has been also objected, that the witness, whose belief or opinion of mental capacity was in this case rejected, had not the means of forming such a judgment thereon as was proper to be submitted to the Jury. Unquestionably, before a
 
 *85
 
 witness can be received to testify as to the fact of capacity, it must appear that he had an adequate opportunity of observing and judging of capacity. But so different are the powers and the habits of observation in different persons, that no genera] rule can be laid down as to what shall be deemed a sufficient opportunity of observation, other than that it has in fact enabled the observer to form a belief or judgment thereupon. So it is in the analogous case of hand-writings. If a witness declares that he has seen the party write, whether it has been once only, or a thousand times, this is enough to introduce the enquiry, whether he believes the paper produced to be the party’s hand-writing. His belief is evidence the weight of which must depend upon a consideration of all the circumstances, under which it was formed. It may be that the judgment of the witness in this case, founded solely upon the occurrences in a single interview, and of which, notwithstanding the general impression thereby created, he remembers no distinct marked act of childishness or folly, would have weighed little with the Jury in determining the matter in controversy. But if belief of capacity founded on ) personal observation be evidence, and we think it is, it is ad-
 
 \
 
 missible whether the opportunity for observation has been (frequent or rare. Whatever might be the weight of the re® ejected testimony, we hold that the plaintiffs had a right to 'insist on its being placed in the scales of evidence, and that there was error in the opinion, which rejected it.
 

 The other opinion to which exception has been taken is the rejection of the testimony offered to show that Nancy Clary, one of the
 
 cestui que trusts
 
 in the deed, under which the defendant claims the property in dispute, had requested the witness to exercise some improper influence over Mary Clary, in order to obtain a conveyance of the property, which request the witness had not complied with. In this opinion we see no error. Waiving other objections to the testimony, the inquiry about influence was altogether irrelevant and nugatory.
 
 “
 
 Improper influence” constitutes no
 
 legal
 
 objection to the validity of a deed, but furnishes a ground for the intervention of a Court of Equity. It is otherwise indeed with a Will. There may be such an
 
 *86
 
 influence exerted over a mind of sufficient sanity for general purposes, and of sufficient discretion to regulate the par. ty’s affairs in general, as will invalidate a Will, and render it inconsistent with the legal idea of a free and disposing mind.
 
 Mountain
 
 v
 
 Bennett,
 
 1 Cox. 355. There is no power in a Court of Equity to set aside a Will as it may a deed, because of imposition. The whole jurisdiction over a Will belongs to the tribunal appointed to decide whether it be or be not the Will of the deceased, and that tribunal will refuse to the instrument this character, when it sees that the
 
 animus testandi
 
 is wanting. See 1 Wil. on Ex. 35, 36, and the authorities there cited.
 

 Because of the,error in the first opinion to which the plaintiff excepted, the judgment of the Superior Court must be reversed, and the cause submitted to another Jury.
 

 Per Curiam. Judgment reversed and
 
 venire de novo
 
 awarded.