Upon the trial defendant admitted the delivery of the message for transmission, the payment of costs therefor and, further, that the telegram had never been delivered to Franklin Sherrill, for whom it was intended. The message was delivered to defendant company at Lebanon, Ind., by the witness Booher, acting for the sender, and was in words and figures as follows:
"Max, Ind., 1 Dec. 1890. Mr. Franklin Sherrill, Statesville, N.C.: Tell Henry to come home. Lou is bad sick. M. C. Sherrill.
"Tel. ans. quick; it's paid for here.
"16 pd. $3.50 gt. spl. dely."
It appeared that plaintiff, who is referred to in the telegram as Henry, was on 1 December, 1890, temporarily residing with his father in Shiloh Township, eight or nine miles from Statesville; that he lived in Indiana; that the sender of the telegram, M. C. Sherill, (355) is his sister, and Lou, referred to in the message, is his daughter, since deceased. *Page 243 
C. J. Jones, defendant's operator at Statesville, testified that he received the message in question, and that he repeatedly sent out a message boy to find the addressee, whom he did not know; that, the search proving unavailing, he sent the message to Davidson, being informed by J. S. Ramsey that a Frank Sherrill, formerly residing at Troutman, had moved to that place; that he shortly afterwards received a message from one Schofield, who was the operator at Davidson, stating that the message was delivered, and that there was no answer; that on the evening of 2 December he received an inquiry from the operator at Lebanon, and answered that the message had been delivered; that he did not know until after the commencement of this suit that the message had not been delivered to the person for whom it was intended. The witness also testified that there was a rule of the company requiring him to telegraph for a better address if the address is doubtful, but that in this case he did not do so. Rose, the messenger boy to whom the witness Jones delivered the message, testified that he inquired of certain persons for the residence of Franklin Sherrill, and was informed that a man of that name lived in Troutman. W. F. Sherrill, to whom the message was delivered at Davidson, testified that he did not tell defendant company that the message was not intended for him; that his place of business was 400 yards from the telegraph office; and that Schofield, the operator, lived about 350 yards from him. The message was delivered to him by one not in defendant's employment.
The court submitted the following issues:
"1. Did the defendant negligently fail to deliver the said message to Franklin Sherrill? 2. Was plaintiff guilty of contributory negligence, as alleged in the answer? 3. Was such contributory (356) negligence the proximate cause of the injury complained of? 4. Was the message mentioned in the complaint sent subject to the stipulation and agreement that the defendant company would not be liable for damage unless the claim for damage was presented to defendant in writing within sixty (60) days from the sending of the message? 5. Did the plaintiff, within sixty (60) days after he found out that said message had been sent and not delivered to him, present to the defendant company in writing a claim for damage for the alleged failure to deliver said message? 6. What damage, if any, has the plaintiff sustained by reason of defendant's failure to deliver said message?"
The following instructions, referred to in the opinion of the Court, were given at plaintiff's request: "5. That if you find from the evidence of Jones that he sent the message to W. F. Sherrill on 2 December, and that he failed to call for an answer to the message, this was negligence and entitled the plaintiff to your verdict on the first issue; and if *Page 244 
Schofield wired him that there was `no answer,' this was sufficient to put him on guard, and it was encumbent on him to find out from Schofield why there was no answer. In this state of the case the plaintiff is entitled to recover. 6. That a delivery of the message at Davidson to W. F. Sherrill, as testified to, is negligence in the defendant, and entitles the plaintiff to your verdict on the first issue. 7. That if you should find from the evidence that the sender did not give the post-office address of Franklin Sherrill and the exact spot where he lived to the operator at Lebanon, and that the operator did not require as full and explicit directions as he had the opportunity to obtain, and that both were (357) guilty of negligence at that time, nevertheless if the message arrived safely to the operator at Statesville, North Carolina, and you should find that he is guilty of negligence in the manner as above explained, the question of contributory negligence is out of the case, and you will find the second and third issues for the plaintiff and answer them `No.'"
The first paragraph of his Honor's charge was as follows: "1. That if the jury should find that the message in question was received at Statesville at 12:40 o'clock, 1 December, 1890, and within 10 or 15 minutes thereafter the defendant, through its operator and messenger, commenced trying to find out where said Franklin Sherrill lived; and that he, the said operator, and messenger boy made inquiry of W. R. Mills, Chief of Police of Statesville, J. S. Ramsey, cotton buyer, F. A. Sherrill, merchant, W. P. Coone, deputy register of deeds, George W. Clegg, ex-County Treasurer, and then County Surveyor, Lon Cowan, a deputy sheriff, W. H. H. Gregory, cotton buyer, at the post-office in Statesville, at the livery stables of M. Misenheimer and George Daniel, respectively; and that said inquiries were continued, as testified by the witnesses, from 12:40 P. M. of 1 December, 1900, up to 2:30 of the next day; and that said messenger and operator, a short time before 2:30 P. M. on 2 December, 1890, were informed by said parties, or either of them, that W. F. Sherrill lived at Troutman, six or seven miles from Statesville; and that one or more of said parties soon thereafter informed said operator that W. F. Sherrill had moved to Davidson, whereupon said message was immediately transmitted to W. F. Sherrill, the witness, at Davidson, and he received it without giving the defendant notice that said message was not intended for him; and that if you believe the evidence as testified to by all the witnesses for the defendant, there being no conflict, and that they did nothing more, then I charge you (358) that the defendant is guilty of negligence, and you should find the first issue `Yes.'" *Page 245 
The jury responded "Yes" to the first and second issues, and "No" to the third and fourth, did not answer the fifth, and to the sixth answered "$1,100." From the judgment on the verdict the defendant appealed.
By a series of decisions it has become settled law in this State that the sender of a telegram may recover, where the company is shown to be negligent, damages for such mental anguish as may be caused either by the failure to deliver or delay in the delivery of the message sent. Young v.Telegraph Co., 107 N.C. 370; Thompson v. Telegraph Co., ib., 449;Sherrill v. Telegraph Co., 116 N.C. 655. It was held on the last appeal (116 N.C. 655) that proof of the receipt of a message by the agent of the company with the understanding that it would be sent to its destination, together with evidence of the failure to deliver, constitutes a prima facie case in the action brought by the sender against the corporation to recover for its negligence. When, therefore, these facts were satisfactorily proved, nothing more appearing, the plaintiff was entitled to an affirmative response to the first issue and to compensatory damages for mental anguish suffered in consequence of the delay, as distinguished from that which was due to the distressing nature of the message and which would have been experienced had there been no failure to deliver it. The opinion of the Court on the last hearing puts another question behind us.
Upon the defendant's own showing its agent at Statesville (359) (whose negligence we have heretofore held was that of the company) violated its rules when he omitted, after spending a day in fruitless inquiry, to wire back for a better address and when he neglected to notify the sender before that time of the failure to find Frank Sherrill. The agent at Statesville testified on the last trial that he did not wire back because he had all of the information that the agent could give him, but on cross-examination stated that it was because he presumed that the agent at Lebanon had given him all the information he could. We do not think he was warranted in this assumption. Having failed to furnish any sufficient reason for not complying with the rule, the matter stands as it did before. His admitted and unexplained omission of duty subjected the company to liability unless it was shown that plaintiff's agent was negligent and that her negligence was the proximate cause of his failure to receive the message more promptly. The court was warranted, therefore, in recapitulating the testimony of defendant's witnesses, as was done in the first paragraph of the charge, and telling the jury that admitting it all to be true the defendant was negligent. *Page 246 
The agent at Davidson was also in fault when, after seeing the nature of the message he sent it by a person not employed as a messenger to a citizen of that town who lived but a few hundred yards from him, had no receipt taken for it and made no inquiry to ascertain whether he was the person addressed, especially when W. F. Sherrill was known by him to have a wife and seven children at his home there. The failure to elicit a reply to so urgent a message, which upon its face seemed to demand prompt answer, ought to have stimulated a further investigation on his part. It was clearly an omission of duty to seek no explanation of what seemed unnatural conduct if the message (360) had been delivered to the proper person. Had Schofield ascertained, as by proper diligence he might have learned, that the message had been delivered to the wrong person and so notified the agent at Statesville, it was not too late then to save the plaintiff much unnecessary anguish. We think it was not error, therefore, to give the instructions submitted for plaintiff and numbered 5 and 6. The proper construction to be placed upon number 7 of the same prayer, which was likewise given, seems to us to render it unobjectionable upon any tenable ground. Even though it be conceded that the plaintiff's agent at Lebanon did not exercise due care in making special arrangements for the delivery of an answer, precaution was nevertheless taken to leave in the hands of the agent there a sufficient sum to pay for the delivery at Max, Indiana, where the sender of the telegram was known by him to reside, of any notice that might be received by him. It appeared also that there were daily mails from Lebanon to Max and a post-office at Max. So that if Schofield had done his duty, or if Jones, the operator at Statesville, had upon receipt of the message made more diligent inquiry or instructed the boy entrusted with the message with the important information that the person addressed had been represented as living 7 or 8 miles from Statesville, the result might have been different. Ramsey would not have told the messenger that a person represented by the sender as living within the distance mentioned resided then at Davidson. He would have assumed doubtless on such information that the sender must know of the truth of a statement which constituted a part of the description of the person sent with the telegraph address at Statesville. Due diligence on the part of either would have led to the return of a notice of nondelivery to the sender, and would have elicited a more specific description of locality, since it appears that the plaintiff was at the home of the sendee, the location of (361) which she could and would have designated unmistakably when it became apparently necessary to do so. If the exercise of ordinary care by either would have led to such further explanation as *Page 247 
would have enabled Jones to deliver the message to plaintiff, he might have been spared the mental anguish for which he seeks to recover compensation. If, notwithstanding the want of care on the part of the plaintiff's sister and Booher, who acted as her agent in sending the telegram, either Jones or Schofield had exercised due diligence, the suffering complained of would not have ensued. The Judge applied the law correctly to the testimony when he told the jury that the negligent conduct of the agent at Statesville, if the jury found that he had not done his duty, would dispense with the necessity for considering the question of contributory negligence. Pickett v. R. R., post, 616;Deans v. R. R., 107 N.C. 686. In reply to a direct question M. C. Sherrill, who was the sender of the telegram, the sister of the plaintiff and resided with him before and after his visit to North Carolina, was allowed to depose (the defendant objecting) that plaintiff's mental anguish was very severe. The exception is insisted on upon the ground that the question whether a person was suffering mentally, when of sound mind, was one upon which no person but an expert was competent to express an opinion. When the subject-matter of the inquiry partakes of the nature of science, art or trade, persons possessing peculiar knowledge, skill or experience derived from previous practice, study or training are allowed to give an opinion, if such opinion is calculated to assist inexperienced persons in arriving at a proper solution of the question. When, however, the inquiry is of such a nature that a person of sound judgment might be reasonably expected to arrive at a conclusion as correct and just without as with the advantage of such study (362) and experience, a witness is not allowed to give an opinion as an expert, and his opinion is held inadmissible because it gives no new light to the jury, who are presumed to be capable of bringing to their aid a fair share of intelligence, common sense and reason in drawing such inferences from the testimony as will lead them to a just conclusion as to the facts. S. v. Boyle, 104 N.C. 800; Rogers Expert Testimony, secs. 6 and 7; Lawson Expert Testimony, Rule 28. While the general rule is that witnesses are competent to testify only as to facts and not to give opinions, there are exceptions besides the case of those who qualify themselves to speak as experts. Impressions may be made upon the mind of a witness by observation only, as to handwriting, the identity of tracks or of persons, or in reference to the temper or general mental or bodily state, which cannot be reproduced by verification before the jury by descriptive words or pictures of what was actually seen. It it impossible to communicate the information thus derived from the senses, and which influences the minds of all reasonable beings in any other way than by stating the opinion based upon it. An opinion *Page 248 
founded upon such actual observation, said Gaston, J., in Clary v. Clary,24 N.C. 78, "approaches to knowledge, and is knowledge, as far as the imperfection of human nature will permit knowledge of these things to be acquired, and the result thus acquired should be communicated to the jury." But the rule is different as to the qualification of a witness to speak of temper or mental state from that applicable in the case of experts. It is the exclusive province of the court to pass upon the preliminary question whether the proposed expert has the peculiar fitness claimed for him to testify as to the subjects within the domain of art, science or skill. But where a witness states under oath that he has had opportunity by association to judge of the mental condition of (363) a person, or, by seeing one write, of his handwriting or (under our statute) by living in a foreign country to understand its laws, he is competent to give his opinion if he claim that he has formed one, and the trial Judge is not authorized, under the rulings of this Court, to exclude the testimony on the ground that the opportunities of the witness have been insufficient to enable him to reach a satisfactory conclusion. Clary v. Clary, supra; S. v. Behrman, 114 N.C. 797. The testimony that he has had opportunity to form and has formed the opinion establishes ipso facto his competency to state it to the jury. If further examination discloses the fact that his opportunities to judge of the question have been limited, that he is wanting in intelligence, or has based his opinion of sanity upon insufficient grounds, it is the province of the jury to determine what weight, in the light of all that is developed, is to be attached to his opinion. It is a well-establish rule of evidence that only experts are competent to express opinions as to the existence or nature of the disease from which a person is suffering, or to give a diagnosis of his bodily condition. Lush v. McDaniel, 35 N.C. 485. On the other hand, not only is hearsay evidence of the declarations of another as to his bodily feeling or mental condition admissible (S. v. Harris, 63 N.C. 1; S. v. Hargrave, 97 N.C. 457), but the mental state or appearance of a person, or his manner, habit, conduct or bodily condition, as far as they can be derived from mere observation as distinguished from medical examination, may be proved by the opinion of one who has had opportunities to form it. Lawson, supra, Rule 64;Tobin v. Shaw, 71 Am. Dec., 555. It was competent, therefore, to prove by M. C. Sherrill, the plaintiff's sister, that he seemed to be melancholy or to be suffering severe mental anguish when she was living in (364) his house and constantly associated with him. Lawson, supra. The appearance of the countenance sometimes at least furnishes far more reliable evidence of mental agony than words, which are often *Page 249 
used to give expression to what is feigned, and the impression produced can only be communicated to others as an opinion. Lawson, supra, p. 471.
In Scott v. R. R., 96 N.C. 428; Denmark v. R. R., 107 N.C. 185, and other cases which have followed, it has been held that the nisiprius Judge may in his discretion use two or three issues or confine the jury to one, where the plaintiff alleges as the ground of action negligence and the defendant sets up as a defense contributory negligence. It is true that the first issue was not so framed as to involve the decision both of the question whether the defendant was in fault and whether its negligence was the cause of the injury complained of. The issues as presented involved three distinct inquiries, first, whether the defendant was negligent; second, whether the plaintiff was negligent; third, not whether the defendant's negligence would have caused the injury notwithstanding the negligence of the plaintiff, but whether the latter's negligence was the proximate cause. When there is evidence, as in this case, to show a want of care on the part of a defendant, supervening after the carelessness of a plaintiff, it is usual and preferable, if a third issue is submitted, to embody in it in substance the inquiry whether by want of ordinary care the defendant lost "the last clear chance" to prevent the injury. But the circumstances, as well as this issue, were peculiar, and the test, where the exception arises out of the form of or the adaptation of instructions to issues, is always involved in the inquiry whether it appears that the jury were actually misled or did not have the benefit of instructions prayed for and which would have aided them in passing upon the material facts. In the case at bar, (365) as we have already seen, if the jury found by their response to the first issue that defendant negligently failed to deliver the message to Franklin Sherrill, that negligence consisted in the omission of either Jones or Schofield, or both, to exercise due diligence in ascertaining where the plaintiff was, and in sending notice of failure to find him to Lebanon, so as to get specific information. If that specific information would have led to the delivery of the message and prevented the mental suffering, then the negligence on the part of defendant's agents at Max or Lebanon was not the proximate cause. So that, in the light of this evidence, the Judge was warranted in telling the jury that, if defendant's agents were negligent in failing to notify the sender of nondelivery, and they so found, that omission of duty, and not the more remote want of care in failing to furnish a specific description of the locality in which Frank Sherrill resided, was the proximate cause of whatever mental anguish the plaintiff suffered. While, therefore, we are not disposed to commend such issues for use in future trials, the defendant has *Page 250 
failed to show that by reason of their defective form there has been a failure to explain, through the medium of instructions, the law applicable to them. For the reasons given we think there was no error and the judgment must be
Affirmed.
Cited: Ellerbee v. R. R., 118 N.C. 1026; Cashion v. Tel. Co.,123 N.C. 270; Hendricks v. Tel. Co., 126 N.C. 310; Helms v.Tel. Co., 143 N.C. 395; Taylor v. Security Co., 145 N.C. 396;Shaw v. Tel. Co., 151 N.C. 641; Penn v. Tel. Co., 159 N.C. 315;S. v. Thompson, 161 N.C. 242; Howard v. Tel. Co., 170 N.C. 499.
(366)