WALKER, J., concurring, cited with "approval" In re Peterson,136 N.C. 28, and distinguished "opinion evidence" from the character of the evidence in this case.
This is an action for the recovery of the amount of a policy of insurance on the life of Frank L. Taylor, issued by defendant company, payable to plaintiff.
Defendant admitted that the policy issued, that plaintiff was the beneficiary named therein, the death of insured, the insurable interest of plaintiff in his life, and that proof of death had been duly filed. It alleged, by way of defense, that the insured had made false answers in his application to the following questions:
"14. Have you ever been intemperate in the use of malt or spirituous liquors? No. If so, when and how often? Never.
"15. Do you use malt or spirituous liquors now? No. If so, definitely, how much and how often? X
"16. Do you now or have you ever used, habitually, opium, chloral, cocaine, or any other drug? No."
The following issues were submitted to the jury:
"Did the insured, Frank L. Taylor, represent in the contract of insurance sued on that he had never been intemperate in the use of malt or spirituous liquors? Answer: Yes.
"2. If so, was such representation false? Answer: No.
"3. If so, was such representation material? Answer: Yes.
"4. What sum, if any, is the plaintiff entitled to recover of the defendant? Answer: $5,056.12, with interest thereon from 15 October, 1906."
Plaintiff consented that the jury should answer the first and third issues in the affirmative. Defendant took the burden of establishing the second issue, and introduced the evidence of persons who were acquainted with insured for several years prior to the date of the application — knew his habits, etc. They testified in regard to his habit in (385) the use of spirituous liquors, based upon their own knowledge. Several of defendant's witnesses were asked by plaintiff, on cross-examination, "How frequently did you see Frank Taylor while he lived in Wilson?" "Practically every day." Q. "From your knowledge of him and your observation of him from day to day, would you say that he was a man of intemperate habits in the use of alcoholic liquors?" Defendant objected and excepted to admission of question. Answer: "No." Defendant excepted. It was in evidence that insured lived in Wilson from 1901-1904.
Plaintiff introduced a number of witnesses, among them Col. W. H. Osborne, who testified that he lived in Greensboro and had lived there since 1892; that he was born and reared in Oxford; that he knew the insured in Greensboro, when, in 1904, he clerked in the drug store of J. D. Helms; that insured lived in Greensboro several months, and that witness saw him nearly every day. Witness was asked by plaintiff's *Page 279 
counsel, "if, from his knowledge of insured and his observation of him and his habits, he knew whether insured was temperate or intemperate in the use of malt or spirituous liquors." Witness answered that he thought he did, and that insured was temperate. On cross-examination, witness testified that, at the time referred to, he was mayor of Greensboro; that he was at Helms' drug store very often at night, but rarely, if ever, late at night; that he made the drug store his headquarters, and that insured was on duty when he was there.
J. D. Helms testified that he lived in Greensboro; conducted a drug store there; that insured was prescription clerk in his store from June 20 to October 20, 1904, and that he (witness) had personal supervision of his store. Witness was asked by plaintiff's counsel: "From your knowledge of insured and your observation of him and his habits, would you say that he was intemperate in the use of (386) spirituous or malt liquors?" Witness replied: "The insured was temperate." On cross-examination, witness said that if insured ever drank, he had not heard of it.
T. M. Washington testified that he left Granville County in the year 1891 and went to Wilson County, where he had lived ever since; that he knew the insured intimately while he lived in Wilson; that witness saw insured every day and sometimes several times a day when witness was in town. Witness was then asked by plaintiff's counsel: "From your intimate acquaintance with insured, your opportunities for observing him and his habits, was he temperate or intemperate in the use of malt or spirituous liquors?" Answer: "I consider him temperate. I think I know."
To each and every one of the questions and answers defendant duly excepted. Defendant's testimony tended to show that insured was under the influence of liquor several times in Wilson, Oxford, Morehead City, Greensboro, and once in Richmond.
Defendant, in apt time, requested his Honor to instruct the jury as set out in the opinion, and to his refusal duly excepted.
His Honor, in response to defendant's prayer, among other things, instructed the jury as follows:
"The court charges the jury that the word `intemperate,' as used in this application, is defined by the law to mean as follows: `Intemperance is the use of anything beyond moderation, and it does not necessarily imply drunkenness. An occasional use of alcoholic liquors is not to be deemed intemperance, but there must be indulgence to such an extent as would be considered an excess.' "The court charges you that an insurance company in North Carolina has a right to prescribe, as a condition precedent to the issuing of a life policy, that the applicant shall state in writing whether or not he *Page 280 
(387) has ever been intemperate in the use of spirituous or malt liquor, and that the answer to same is a material fact in said application.
"Intemperance does not necessarily mean habitual drunkenness. Habitual drunkenness is, of course, intemperance, but there may be intemperance in the absence of habitual drunkenness. Therefore, if the jury should find from the evidence that during the several years preceding the time when the insured, Frank L. Taylor, signed the application for the policy sued on in this case he was often under the influence of some intoxicating liquor and was from time to time what is commonly called drunk, and you should further find that he represented, when applying for said policy, that he had never been intemperate in the use of malt or spirituous liquors, then and in that event the court charges you, gentlemen, that his answer to the question, `Have you ever been intemperate in the use of malt or spirituous liquors?' was false, and you should answer the second issue `Yes.'
"If the jury should find from the evidence that the insured's representation that he had never been intemperate in the use of malt or spirituous liquors was false, and that said representation was material, you would then have a plain duty to perform; and the court charges you that this duty ought not to be influenced and cannot be changed by any consideration of the manner in which the interests of the parties to this cause may be affected.
"While the policy in question, under all the circumstances of this case, might not be avoided by proof of an occasional use of malt or spirituous liquors, yet such occasional use does not mean occasional sprees of drunkenness; and if the jury should find from the evidence that, prior to the date of the application in question, the insured occasionally and from time to time, with intervals of perfect sobriety of greater or less duration between, got on what are called sprees and became intoxicated, the court charges you that such sprees, although (388) occasional and although occurring with varying intervals of sobriety, would constitute an intemperate use of malt or spirituous liquors; and if you should so find, it would be your duty to answer the second issue `Yes'; and the court further charges you, if you so find, to answer the second issue `Yes.'"
In addition to the special instructions given by request of defendant, his Honor charged the jury as follows upon the third issue:
"On the second issue the question for you to ascertain is whether the insured, Frank L. Taylor, was ever intemperate in the use of malt or spirituous liquors. Although you should find that the insured used malt or spirituous liquors in moderation, or that he even occasionally felt their effects, not to intoxication or immoderation, this would not be sufficient *Page 281 
to enable you to answer the third issue `Yes.' In order to enable you to answer this third issue `Yes,' it is necessary for the defendant to satisfy you by the greater weight of the evidence that the insured, Frank L. Taylor, had, prior to the application, been intemperate in the use of malt or spirituous liquors.
"Intemperate means excessive — immoderate. So the question in another form is this: `Had the insured ever used malt or spirituous liquors intemperately, excessively, immoderately?' If you find from the testimony, by the greater weight of the evidence, that he had so used it prior to the date of his application, you will answer the second issue `Yes.' If the defendant has failed to so satisfy you, you will answer the second issue `No.'
"You will consider all the testimony offered by the defendant and by the plaintiff bearing on the question as to whether the insured has been intemperate in the use of malt or spirituous liquors."
The exceptions to his Honor's refusal to give special instructions are noted in the opinion. There was judgment upon the verdict. Defendant excepted and appealed.
After stating the facts: The learned counsel for defendant pressed the exceptions to the admission of the statement of witnesses, based upon personal knowledge and observation, that insured, at the time of his application, was not intemperate in the use of spirituous liquors. The argument assumes that the testimony comes within the definition of "opinion evidence." Plaintiff insists that, properly interpreted, it is the statement by the witness of a fact, and not the expression of an opinion. It has been said that, "if the witness had opportunity to know relevant facts himself, and did observe and note them," his evidence, although expressed in the form of an opinion, is really the statement of a fact.Gilliland v. Board of Education, 141 N.C. 482, citing Greenleaf Ev. (16 Ed.), 441. It is very difficult to draw the line between testimony in which the witness states a fact — ascertained from observation, sensation or other media — and that in which he gives expression to an opinion by observing a number of facts from which, by a mental operation, he comes to a conclusion. Judges have felt themselves embarrassed by the general rule that, except within certain limitations, only facts, as distinguished from conclusions or opinions, were competent to be given in evidence. It is not improbable that too much refinement has found its way into judicial opinions, and *Page 282 
that the practical side of the subject has suffered at the expense of substantial truth and justice. The effort to relieve the law from what has been termed pedantry, and to place it upon a basis suited to the practical affairs of life, in this respect, is both interesting and instructive. Probably in our jurisprudence the most successful and well-sustained effort in this respect is found in the opinion of Gaston, J., in Clary v.Clary, 24 N.C. 78, referred to by Judge Redfield as being done "with great ability and abundant success." Redfield on Wills, 143, (390) note 16. Professor Wigmore thus refers to this opinion and that of Justice Doe, of New Hampshire. After referring to the controversy regarding the admissibility of the class of testimony presented in this appeal, he says: "Generally, the view favoring admission prevailed; the great lawmaking and argument-furnishing precedent for the earlier rulings being the opinion of Mr.Justice Gaston in Clary v. Clary, supra, in North Carolina, in 1841, and for the more recent rulings being the opinions of Mr. Justice Doe, dissenting in Boardman v. Woodman, 47 N. H., 144, and Mr. JusticeFoster, in Hardy v. Merrell, 59 N. H., 250, in the same court, in 1875. The opinion of Mr. Justice Doe succeeded in bringing about a change of heart in his own court and in the arsenal of arguments to whose supplies it is chiefly due that the courts of the country are today so unanimous in accepting the common-sense view of the subject." After defining the "opinion rule," as applied to cases in which "expert evidence" was admissible, Judge Gaston says: "But judgment founded on actual observation of the capacity, disposition, temper, character, peculiarities of habit, form, features or handwriting of others is more than mere opinion. It approaches to knowledge, and is knowledge, so far as the imperfection of human nature will permit knowledge of these things to be acquired; and the result thus acquired should be communicated to the jury, because they have not had the opportunities of personal observation, and because in no other way can they effectually have the benefit of the knowledge gained by the observation of others." The record in this case illustrates the truth of the observation of the learned judge. The question asked the insured is whether he has ever been intemperate in the use of liquors. This question is addressed, not to the opinion of the applicant, but to the fact, based upon the assumption that he has knowledge of the fact in regard to which he is asked. For the purpose of showing that the answer is not true, defendant introduces several witnesses and asks them (391) whether they have seen him "under the influence of alcoholic stimulants." They are not confined to the inquiry whether they have seen him drink liquor; if so, how much, and at what intervals of time; and then asked what he said, did, etc., so that the jury could draw their conclusions. The course of examination pursued was clearly *Page 283 
admissible, because it is uniformly held competent to ask a witness whether a person was intoxicated — under the influence of liquor — that being a fact known to the witness from observation of conduct, other facts, etc. Why may not the witness, after stating the basis of his knowledge, be asked with equal reason whether the applicant was intemperate? It is not easy to see why one class of testimony is to be regarded as fact, while the other is opinion. If the question asked the insured had been, "Have you been under the influence of liquor within one year?" it would have been competent to ask a witness the direct question, "Have you seen the insured under the influence of liquor within one year?" Wherein is the distinction in principle between the two questions? To answer the first requires large data, knowledge or observation, extending over a longer period, but is none the less a conclusion of fact drawn from personal knowledge and observation. That a witness may, having first stated knowledge of the essential facts, be asked whether a person was well or sick, angry or otherwise, and a multitude of other questions of like character, is settled beyond controversy. For a collection of the cases illustrating the extent to which the courts of this country have gone in extending the principle upon which this class of testimony is admitted, see Greenleaf Evidence (16 Ed.), 441; 3 Wigmore Evidence, sec. 1938, note 2. Greenleaf says: "There is, therefore, no rule admitting opinions or inferences when made by one class of persons — experts — and excluding them when made by another class — laymen; but there is a rule excluding them whenever they are superfluous and admitting them whenever they are not." After stating the rule, as applied to persons having special skill or knowledge, he says: (392) "Secondly, from persons who have no special skill, but have personally observed the matter in issue, and cannot adequately state or recite the data so fully and accurately as to put the jury completely in the witness's place and enable them equally well to draw the inference. The absurdities which disfigure the application of the rule come chiefly from a too illiberal interpretation of the latter notion — that is, it is frequently ruled that a personal observant can sufficiently state the observed data without adding his inference, although a just view of the situation would recognize that too much credit has been given to the witness's power of narration, and that, in truth, it is impossible for the data to be stated." The rule, with its limitations, underwent a most able and exhaustive discussion in the Supreme Court of New Hampshire, beginning with the dissenting opinion of Mr. JusticeDoe in Boardman v. Woodman and S. v. Pike, 49 N. H., 397, and the adoption of his opinion by Foster, C. J., in Hardy v.Merrell, as stated by Professor Wigmore. It is interesting to note, as said by Greenleaf (441), that "A more liberal tendency in this respect seems to be making its way in *Page 284 
recent times." All of the writers on the law of evidence agree "that the reports are overloaded with decisions of the sort that ought never to have been called for." While it may be difficult to reconcile all of the cases in our reports, we think that, upon a careful examination of the peculiar facts in each case, there will be found a recognition of the principle announced in Claryv. Clary, supra. In McRae v. Malloy, 93 N.C. at page 154,Smith, C. J., says of this class of testimony: "The opinion is but a condensed and summary method of stating the result of personal observation and communications with the party." In Ins.Co. v. Foley, 105 U.S. 350, the question and answer appear to have been admitted without objection. Field, J., in the opinion, says of the witnesses: "All of them testified from their observation of the conduct of the deceased, and the jury would properly give weight to the testimony, not according to the positiveness of the averments of the witnesses as to their knowledge, but, (393) other considerations being equal, according to their opportunities of observation of the deceased's conduct, and the manner in which those opportunities had been improved. "He further says: "The question was as to the habits of the insured. His occasional use of intoxicating liquor did not render him a man of intemperate habits, nor would one exceptional case of excess justify the application of this character to him," concluding, "And the testimony of witnesses who had been intimate with him for years and knew his general habits may well have satisfied the jury that, whatever excesses he may at times have committed, he was not habitually intemperate." Mr. McKelvey, after stating the general rule excluding opinion evidence, notes the exceptions to the rule, or, speaking more accurately, testimony which is sometimes erroneously supposed to come within it: "The matters referred to are those of which the mind acquires knowledge by the simultaneous action of several of the senses, so that an impression is produced on the mind which cannot be traced to any one fact produced by a single sense, but a statement of which is, nevertheless, a fact. A witness may say that a man appeared intoxicated, or angry, or pleased. In one sense the statement is a conclusion or opinion of the witness, but in a legal sense and within the meaning of the phrase `matter of fact,' as used in the law of evidence, it is not an opinion, but is one of the class of things above mentioned, which are better regarded as matters of fact. The appearance of a man, his actions, his expression, his conversation — a series of things — go to make up the mental picture in the mind of the witness which leads to a knowledge which is as certain and as much a matter of fact as if he testified, from evidence presented to his eyes, to the color of a person's hair or any other physical fact of like nature." Evidence, 174; Ins. Co. v. Lathrop, *Page 285 111 U.S. 612. It would serve no good purpose to review the (394) decisions made by this Court in the cases cited in defendant's brief. We have examined them. Several may be distinguished, while it may be that in some the Court has fallen into the error of over much nicety of refinement. As said by Professor Thayer, in his admirable treatise, "The law of evidence is the creature of experience rather than logic." See, also, Holmes Com. Law, 156.
It may be well to keep in view that this class of testimony is not to be confused with "expert evidence." There the opinion of the witness is admitted, not because he has knowledge of the matter or condition in regard to which he testifies, but, upon an assumed state of facts, sustained by evidence, he, by reason of his skill or learning, is competent to form opinions. The distinction is clearly stated in McKelvey Evidence, 176, etseq. The defendant complains that a large number of witnesses, many of them of great weight in the community, were permitted to testify. The obvious answer to this objection is, that if insured was known to a large number of persons — his habits, conduct, demeanor, etc. — and they all concur in the conclusion, formed from knowledge, that he was temperate, the question is thereby removed from the plane of conjecture — opinion — and placed upon "hard facts." We are of the opinion, both upon reason and authority, that the testimony to which exception was taken was properly admitted.
The court could not have directed the jury to answer the issue as a matter of law. The affirmative was upon the defendant, and certainly it could not be said that there was not ample room for more than one conclusion by fair-minded men. In the brief the first, second, fifth, and ninth assignments of error are conceded to involve this contention. The sixth and seventh assignments raise the much discussed question regarding the weight to be attached to positive and negative testimony. We do not think that the rule for which defendant contends applies in this case. The question was not whether any witness had seen the (395) insured under the influence of liquor, but, conceding that he was so seen, as testified, he was not thereby shown to be intemperate. While this Court has approved the instruction as given in S. v. Murray, 139 N.C. 540 — and we do not question the wisdom of giving it when the testimony presents the contention, for the purpose of aiding the jury — we should hesitate to find reversible error in the failure to give it when the other instructions, as in this case, point out the manner in which the testimony should be considered. An examination of the testimony fails to disclose any substantial contradictory statements by the several witnesses. The real question was whether, conceding the truth of defendant's testimony, the insured had *Page 286 
ever been intemperate in the use of alcoholic liquor. This was fairly submitted to the jury, and they found against the contention of defendant.
We find no reversible error. The judgment must be
Affirmed.