STATE v. LUTHER BANNER.

(Filed 9 December, 1908).

1. Jurors—Motion to Quash—Challenge to Array—Plea Entered.
    A motion to quash on the ground that the jury list had not been revised, and a challenge to the array for the same reason, is made too late, in a criminal action, after entry of plea of not guilty.

2. Jurors—Revision of Jury List—Statutes Directory.
    Revisal, secs. 1957-1960 (Code, secs. 1722-1728), relative to the revision of the jury list, are directory only, and while they should be observed, the failure to do so does not vitiate the venire, in the absence of bad faith or corruption on the part of the county commissioners.

3. Jurors—Qualification—Motion to Quash—Payment of Taxes—Cause Pending—Plea—Discretion of Court.
    Under the provisions of ch. 36, Laws 1907, an indictment may not be quashed or judgment arrested at any time, because one of the grand jurors had not paid his taxes or had a cause pending and at issue. Formerly, it was discretionary with the trial Judge to allow or refuse such motion after entry of plea until the petit jury was sworn and empaneled, and a motion to quash after entry of plea was made too late as a matter of right.

STATE *v.* BANNER.

4. **Jurors—Opinion Formed and Expressed—Trial Judge— Discretion.**

   The finding of the trial Judge that a juror is a fair one, though he has formed and expressed an opinion, is a matter in the discretion of the trial Judge, and not reviewable on appeal.

5. **Jurors—Criminal Action—Right to Reject—Peremptory Challenge Not Exhausted.**

   The right of the prisoner is to object to, and not to select, jurors, and when the jury has been completed before he exhausts his peremptory challenge, he cannot be heard to complain.

6. **Murder — Defense — Insanity — Evidence — Opinion—Non-Expert Witnesses—Mental Capacity.**

   When the defense of insanity is pleaded by the prisoner on trial under indictment for murder, it is competent for non-expert witnesses to testify, from their own personal experience and contact with the prisoner for a period immediately preceding the act of killing, stating the facts and circumstances from which they derive their opinion, that the prisoner knew, and on the day in question knew, it was wrong to kill the deceased in the manner testified to, or established.

7. **Murder—Defense—Insanity—Evidence.**

   When the defense is a plea of insanity and not self-defense, a witness may not testify, as tending to show self-defense, that he had seen deceased armed, on a dark night, at a place where the prisoner would likely pass, some two weeks before the occurrence, though he may testify that he had told the prisoner concerning it, and what the prisoner said and did in consequence, only so far as it may affect the question of insanity, and for that purpose alone.

8. **Murder—Defense—Insanity—Evidence — Character of Deceased.**

   Under the plea of insanity as a defense, upon a trial under an indictment for murder, it is not competent to show the violent or dangerous character of the deceased.

9. **Remarks of Counsel—Misstatements of Law—Power of Court—Correction.**

   It is improper for counsel for defense to argue to the jury matters relevant only to the legal effect of a judgment upon their verdict of insanity, should the jury so find; and it is proper for the Court to correct therein any misstatements of the law calculated to mislead the jury, and instruct them to return a verdict of guilty or not guilty as they may find the fact to be upon the evidence.

INDICTMENT for murder, tried before *Justice, J.,* and a jury, March Term, 1908, of WATAUGA. Defendant appealed.

*Assistant Attorney-General Hayden Clement* for the State.
*L. D. Lowe, M. N. Harshaw, R. Z. Linney* and *Mark Squires* for defendant.

CLARK, C. J.   The deceased and a companion, named Richards, were walking down the street on the opposite side from the store owned and operated by the prisoner.   The prisoner, standing in his store door, called Richards to him. The deceased kept on down the street, and as soon as Richards got near prisoner, the latter stepped into his store, got his double barreled breech loading gun, and fired at the deceased who had then gotten some twenty steps beyond the store, still on the opposite side of the street.   The deceased was looking to the front.   The deceased fell and died instantly.   The prisoner relied solely upon the plea of insanity.

The prisoner after his arraignment and entry of plea of "not guilty," moved to quash the bill because the jury list had been last revised in 1905, and also challenged the array on the same ground.   The motion to quash and the challenge to the array came too late, after entry of plea of "not guilty." *State v. Gardner,* 104 N. C., 740.   Besides "the regulations contained in secs. 1722-1728 of the Code (now Rev., secs. 1957-1960) relative to the revision of the jury list, are directory only, and while they should be observed, the failure to do so does not vitiate the venire, in the absence of bad faith or corruption on the part of the county commissioners," *State v. Dixon,* 131 N. C., 810; *State v. Perry,* 122 N. C., 1021; *State v. Daniels,* 134 N. C., 641.   "The statute is considered directory merely so far as it relates to the action of the commissioners as to the time and place of drawing the jury and as to the revising the jury list." *State v. Teachey,* 138 N. C., 591; *State v. Hensley,* 94 N. C., 1027.

The prisoner moved to quash the bill because a member of the grand jury which found the bill had, at the time, a civil case pending and at issue.   The Court found such to be the

fact but refused to quash, the motion being made after entry of plea of not guilty.

In *State v. Gardner,* 104 N. C., 742, this Court, in commenting upon sec. 1741 of the Code, which has been brought forward verbatim, Revisal, sec. 1970 said: "We are of the opinion, therefore, that, according to the true import of the statute, the prisoner had the right to make the motion to quash up to the time when he was arraigned and entered his plea, and after the plea was entered it was within the discretion of the Judge below to allow or refuse the motion till the jury were sworn and impanelled to try the case. This strict construction gives effect to all the provisions of the statute, but does not abrogate the established common law practice not repugnant to them." Besides, the statute, ch. 36, Laws 1907, now provides, "No indictment shall be quashed, nor shall judgment thereon be arrested, by reason of the fact that any member of the grand jury finding such bills of indictment had not paid his taxes for the preceding year or was a party to any suit pending and at issue." This statute excludes such motion at any time.

The defendant excepted because J. S. Lewis, a juror who was drawn and tendered to prisoner, was challenged for cause to the favor, and on his examination said he had formed and expressed the opinion that the prisoner was guilty and that it would take evidence to remove that impression. He also said, on cross-examination, that he could go into the jury box and hear the evidence and charge of the Court and render a verdict as though he had never heard of the case. "The Court finds that the juror is a fair juror," and the prisoner excepted. The ruling was correct. *State v. Kilgore,* 93 N. C., 533; *State v. Green,* 95 N. C., 611; *State v. DeGraff,* 113 N. C., 688. Besides, the finding that the juror is indifferent is a matter in the discretion of the trial Judge, and not reversible in this Court. *State v. Register,* 133 N. C., 751; *State v. DeGraff,* 133 N. C., 688; *State v. Potts,*

100 N. C., 459; *State v. Green,* 95 N. C., 611; *State v. Collins,* 70 N. C., 241.

Further, the jury was completed before the prisoner exhausted his peremptory challenges. No one sat on the jury to whom he objected. The prisoner's right is to *object* to, not to *select,* jurors. *State v. Gooch,* 94 N. C., 1007; *State v. Hensley, ib.,* 1028.

There were several other exceptions to jurors to the same effect, but, besides being invalid for above reasons, they were abandoned by not being relied on in the prisoner's brief. Rule 32.

One Cook, clerk in the prisoner's store, testified that when the prisoner left, five minutes after the shooting, he told witness to "take care of his business." He further testified, on cross-examination by prisoner's counsel, that the prisoner was considered an exceptionally good trader and shrewd merchant, and he had not noticed much difference in the last three or four months before the killing. He further said, on re-examination, that he had been in prisoner's store for nearly two years at that date, and prisoner's mental condition was about the same as when he first went into the store, and that during those two years he could not discover any change at all in prisoner's mental condition. Prisoner excepted. The witness further said, in reply to queries, that at any time in those two years the prisoner knew that it was wrong to shoot a man down, unless he was so drunk he would not know a man when he saw him. The cross-examination had endeavored to show by witness that the prisoner was insane, and these questions were legitimate to show that the prisoner was attending to business and knew that it was wrong to shoot any one down. In *State v. Haywood,* 61 N. C., 376, the Court approved the charge, when the defence of insanity was set up, "if the prisoner was conscious of doing wrong at the time he committed the homicide, he is responsible." The prisoner's counsel, on cross-examination of this witness, the

prisoner's clerk, who had been in the store with him daily for nearly two years, endeavored to show that prisoner's mental condition had much deteriorated in the last four or five months, and it was competent on re-examination to contradict that supposition and to elicit the witness' opinion (*Clary v. Clary,* 24 N. C., 78) that during those two years, when the witness had the fullest opportunity of close observation of the prisoner, he at all times was sane enough to know that it was wrong to shoot a man down. Any one, though not an expert, who has opportunity of observation of a person is competent to express his opinion of that person's sanity or insanity, *Clary v. Clary, supra.*

In *State v. Khoury, ante,* 454, it is said, "The Court permitted witnesses who had seen defendant, and had more or less opportunity to form an opinion as to his mental condition, to express said opinion. This is in accordance with repeated rulings of this Court, and may now be regarded as settled law. The value of the opinion is dependent upon the opportunity of the witnesses to form it. *Clary v. Clary,* 24 N. C., 78; *State v. Bowman,* 78 N. C., 509."

Dr. Hodges, who had been the prisoner's physician, after testifying that the prisoner had been postmaster, revenue officer and member of Legislature, stated on cross-examination, without objection, that he had never seen the prisoner sober when he, witness, did not think the prisoner had intelligence sufficient to know right from wrong, that he had seen prisoner irritable when he would not consider right from wrong, but the witness thought he knew right from wrong. The witness further stated that the last time he saw prisoner sober, "in his opinion, the prisoner had sense enough to know it was wrong to take out his shotgun and shoot a man in the back of the head, that he walked into prisoner's store just before the homicide and shook hands with him, noticed nothing peculiar about him, thinks the prisoner would have known it was wrong that day to shoot a man." This evidence

was brought out on cross examination of the prisoner's witness, and the opinions expressed were competent upon the authorities above cited.

The prisoner offered to show by the evidence of one E. J. Banner that, within two weeks of the homicide, the witness saw the deceased at a log across the creek on the highway, with a gun on his arm, about dark, and that he communicated this at once to the prisoner, and, then, to show what the prisoner said and did upon receiving said information. The Court would not allow the witness to testify as to what he saw of deceased, but the witness was allowed to state what he told the prisoner for the purpose only of tending to prove the prisoner's insanity, and the witness was permitted to state what the prisoner said and did at the time he received the information from the witness. Inasmuch as the defendant did not rely upon the plea of self defense, and as there was no element of self defence in the case, the Court properly excluded the actions of the deceased before the homicide from the consideration of the jury, but allowed the witness to testify as to the effect the communication of said actions had upon the prisoner. This was as far as the Court could go, and the exception is without merit.

In *State v. Worley,* 141 N. C., 766, the Court holds that evidence was clearly inadmissible which tended to show the declaration of the deceased in relation to a prior difficulty with prisoner, the Court saying: "It contained no threat and was a narrative of past transactions." This exception is even weaker than that, inasmuch as it does not even show a prior difficulty, but only that deceased was armed and was on the road or pathway where prisoner was accustomed to travel.

The prisoner offered to prove the character of the deceased as a dangerous, violent man. This was properly excluded. *State v. Exum,* 138 N. C., 607. The exceptions to the rule that the character of the deceased cannot be put in evidence are: 1. When there is evidence tending to prove that the

homicide was committed in self defence. 2. When the evidence is wholly circumstantial, and the character of the transaction is in doubt. *State v. Turpin,* 77 N. C., 473; *State v. Byrd,* 121 N. C., 688; *State v. McIver,* 125 N. C., 646.

During the argument, the counsel for the prisoner, in their argument to the jury, told the jury "the only defence upon which they relied for acquittal was insanity, and that if the jury acquitted the prisoner he would not be turned loose, but it was the duty of the Judge to commit him to the asylum for the criminally insane, where he would have to remain until he was relieved by an act of the Legislature, which would never be done, and the prisoner would be confined in an insane asylum for the remainder of his life."

At the close of the charge of the Court, to which there was no exception, the Court added the following: "Your attention has been called to the statute which provides that a prisoner acquitted upon the defense of insanity may be by the Judge committed to the asylum for the criminally insane and kept there until he is discharged by an act of the Legislature. And it has been argued to you that, in case the prisoner was acquitted, the Judge would have the right to send him to the asylum for the criminally insane. That act of the Legislature has been passed upon by the Supreme Court of North Carolina and declared to be unconstitutional, and if the prisoner is acquitted because of insanity at the time he committed the offense the Court has no power to send him to an asylum, but he must be discharged. I have called your attention to this, not for the purpose of influencing your verdict one way or the other, but to correct the impression which may have been made upon your minds from the argument of counsel. It is your duty to base your verdict upon the evidence before you." The prisoner excepted.

This exception cannot be sustained. The argumnt of counsel was improper. The jury should not consider the sentence the Court may impose. It is the province of the jury to pass

upon the facts and return a verdict of guilty or not guilty as they may find the fact to be. There the responsibility of the jury ends. · The remarks of the Court were proper in order to correct the effect of the improper remarks of counsel.

The jury returned a verdict of guilty of murder in the second degree. The prisoner has no cause to complain of his trial, but good ground to congratulate himself on the result, for the evidence would have justified finding him guilty of murder in the first degree. There was no evidence that would have justified a jury in sustaining the plea of insanity, but upon the uncontroverted facts as to the homicide, there was no other possible plea to which the prisoner's counsel could resort.

No error.