Pearson, C. J.
 

 No one can read the record in this case without receiving the impression, that the instructions given
 
 *474
 
 by liis Honor, do not put the prisoner’s case to the jury, in as favorable a light, as through his counsel he requested, and had a right to request, of the Court.
 

 After the jury returned and made known that the case turned upon the degree of credit, to which the testimony of the mother of the prisoner was entitled, his counsel requested the Court to instruct them that in passing on her testimony, they had the right to consider her demeanor-on the stand, the consistency of her statements, and the fact that she had proved a good character. This, to say the least, was not given,— in effect, was refused, and we have the question : a proper instruction is prayed for and refused. There is enor. The personal explanation which his Honor adds at the foot of the record, can have no bearing upon the legal rights of the prisoner.
 

 We deem it unnecessary to notice the other parts of the charge which is excepted to, except to say the exjiression to “ weigh with many grains of allowance,” is a figure of speech, and seems to have been used in the sense of receiving with caution, or as his Honor says with a “jealous eye”; and not in the sense that some abatement or deduction was necessarily to be made.
 

 The statement of the case is made up in a manner so unsatisfactory, that we are unwilling to express an opinion upon the admissibility of proof that an uncle and a brother of the prisoner were insane, which was offered to show an hereditary malady, as a circumstance tending to prove the allegation that the prisoner was himself insane. It is a lamentable fact, admitted by eveiy one, that such maladies are hereditary; and it would seem that proof of the fact, that members of the family, so related as to have the same blood, are, or have been afflicted with a like malady, is admissible as a circumstance, which, aided by other circumstances and proofs, would go to shew the insanity of the prisoner, although, of course, evidence of such hereditary taint in the blood, would only be one link in the chain, and would not
 
 per
 
 se, establish the fact; but the question, as to the policy or expediency of admitting
 
 *475
 
 such evidence in legal investigations, presents many and very great difficulties; it is wrong to exclude what may lead to truth, and yet such evidence would, in numberless cases, lead to falsehood, and screen the guilty in defiance of truth. On this account, we find it in some degree, an open question in the legal authorities. Thus far, the way seems to be clear; in order to render it admissible, the species of insanity alleged, and that which is offered to be proved in respect to the members of the family, must be of the same character; and the instances to be proven, must have been notorious, so as to be capable of being established by general reputation, and not left to depend upon particular facts and proof, about which witnesses may differ, and the consequence of which would be to run off into numberless and endless collateral issues; so that in trying the question as to the insanity of one, the supposed insanity of a half dozen would be drawn in.
 

 In this case, the testimony of the prisoner’s mother, in regard to his alleged insanity, is very vague and unsatisfactory, so far as it tends to shew the character and kind of insanity with which she supposed her son to be afflicted. Was it temporary in its nature like
 
 mania a potu?
 
 or fixed derangement? Bo is the evidence which was offered as to the uncle and brother. Was that notorious, or only supposed to exist by a few ? Was it
 
 mania a potu,
 
 or of a permanent type; and of the like character, so as to tend to show an hereditary taint? On account of this vagueness, we forbear to express an opinion.
 

 PicR 0URIAH. Judgment reversed.
 
 Venire de novo.