## STATE *v.* JOHN ALLEN KETCHEY.

The Act of 1868-'69, chap. 272, and the Act amendatory thereof, 1871-'72, chap. 15, authorizing the Governor of the State to appoint Special Terms of the Superior Courts, are not unconstitutional. And in appointing such Special Terms, the Governor is not bound by the certificate of the Judge, so far as to confine such terms to the trial of a particular class of cases.

It is not necessary that a prisoner should be arraigned and plead at a preceding regular term to the Special Term at which he is tried.

Because of a juror's being first cousin to the prisoner, is no good cause of challenge by the prisoner, unless it be shown that ill feeling or bad blood exists between the juror and the prisoner.

A witness may be allowed to express his opinion as to the state of mind of another witness, during certain periods; and it is not necessary that such witness should be an expert or a physician.

(*State* v. *Perry*, Busb. 330; *State* v. *Baker*, 63 N. C. Rep. 279; and *State* v. *Henderson*, 68 N. C. Rep. 350, cited and approved.)

INDICTMENT, for Rape, tried before *Albertson, J.*, at a Special (August) Term, 1873, of ROWAN Superior Court.

The objection taken to the rulings of his Honor, and the points raised on the trial below, are fully set out in the opinion of Justice Settle.

The prisoner was found guilty. Motion for a new trial; motion refused. Judgment and appeal.

*Jones & Jones* and *Craige & Craige,* and *J. M. McCorkle,* for the prisoner.

*Attorney General Hargrove* and *Bailey,* for the State.

Settle, J.   The learned counsel for the defence have made many excepcions, not only to the constitutionality and regularity of the Court which tried the prisoner, but also to the rulings of his Honor on the trial.

As some of these exceptions were abandoned, and others not pressed in this Court, we shall notice only such as were urged, and which seem to require some comment.

1st. It is insisted in view of Art. 4, sec. 14 of the Constitution, that the Legislature had no right to pass the act of 1868- 68, ch. 273, and the amendatory act of 1871–'72, chap. 15, under which the Governor appointed the special term of the Court at which the prisoner was tried.

2d. And further, that if said acts are constitutional, yet as Judge *Cloud* had only certified to His Excellency that there was such an accumulation of *civil* actions in the Superior Court of Rowan county as to require the holding of a special term for the disposal of such *civil* actions, he had no power under the acts in question to issue a commission to a Judge to hold a Court for the trial of both *civil* and *criminal* actions.

We see no conflict between the Constitution and the acts in question, and if indeed there were some apparent conflict, we should feel ourselves bound, after recognizing the validity of Courts of Oyer and Terminer and special terms, in the most solemn cases, not to disturb a very convenient and beneficial method of dispensing justice.

Upon the second branch of the objection it is sufficient to

say, that the Governor is not bound to follow the certificate of the Judge; and that there is nothing in the acts to prevent the Governor, after cause is laid before him to justify a special term, from exercising his discretion, as to the extent of the jurisdiction, for the trial of actions, he may see fit to confer on such special terms.

We have held, since the adoption of our present Constitution, in *State* v. *Baker,* 63 N. C., 279, and also in *State* v. *Henderson,* 68 N. C., 350, that a Court of Oyer and Terminer, held under the act of Feb. 9, 1862, is a Superior Court, and is not repugnant to the Constitution.

After a verdict of guilty, the prisoner's counsel insisted that the Court could not legally try the prisoner, because he had not, prior to this special term, been arraigned, and no issue had been joined at a precedent regular term of the Court.

After what has been said it would seem unnecessary to add anything further in support of the powers of special terms, but we will quote section 3 of the act of 1868–'69, *supra,* which declares that " the special terms of the Superior Courts, held in pursuance of this act . shall have all the jurisdiction and powers that regular terms of the Superior Courts have."

By this we must understand that such special terms have all necessary jurisdiction and powers to dispose of such business as may be authorized to be heard under the Commission constituting the Court.

This interpretation is consistent with the Constitution and all the acts of the General Assembly on the subject, and enables the Governor to authorize just such Courts as the exigencies of the case may require.

We now come to the exceptions made to the rulings of his Honor in the progress of the trial.

1st. A first cousin of the prisoner was tendered as a juror, when the prisoner challenged him for cause, but the only cause assigned was the relationship existing between them.

This would undoubtedly have been a good cause of challenge on the part of the State, but was it so for the prisoner? We

think not. Lord COKE says that relationship is a good cause of principal challenge, no matter how remote soever, for the law presumeth that one kinsman doth favor another before a stranger. Thomas' Coke, 3 vol., 518. And the same doctrine is held in *State* v. *Perry*, Busbee, 330.

The prisoner does not say that his cousin is his enemy.

Had such cause been assigned and found to be true, the juror should have been rejected. Family feuds are apt to be very bitter.

2d. One Monroe Miller testified that he thought he saw the prisoner on the day of the alleged rape, at an hour which would render it highly improbable that he could have done the act at the time stated by the prosecutrix.

A witness was then offered by the State, who testified, after objection by the prisoner, that he knew Miller well; that he had lived with him, and that at certain periods of the month said Miller did not seem to be right in his mind, whilst at other times he was rational, and that at the period alluded to he seemed to be dull and his ideas and statements confused. The prisoner objects because the witness was allowed to give his opinion as to the state of Miller's mind.

It is said in *Clary* v. *Clary*, 2 Ired. 78, there are facts which from their nature exclude all direct positive proof. No man can testify, as of a fact within his knowledge, to the sanity or insanity of another. Such a question, when it arises, must be determined by other than direct proof, and in that case the opinion of a witness as to the testator's state of mind was held to be competent evidence.

This position is supported by 1 Greenleaf on Evidence, sec. 441, where it is said that insanity belongs to that class of facts, which, from the very nature of things, must be proved by the opinion of witnesses.

And the cases establish the position, that it is not necessary that the witnesses to prove sanity or insanity should be physicians or experts.

3d. The third and last exception is, that his Honor per-

mitted witnesses to say that they had seen the prisoner about the time when a horse and a cow and a trunk were stolen.

But the record further states that reference to the stolen property was allowed by the Court, and so stated at the time of its admission, alone to fix the date of the prisoner's presence in the county; and in his Honor's charge to the jury, he directed them to regard this evidence for the purpose solely of fixing dates and to give no other weight thereto.

When evidence is irrelevant and calculated to mislead or prejudice a jury, it is error to receive it, but we cannot say that it was irrelevant to show that the prisoner was in the county at a certain time, and the jury could not have been misled or prejudiced by this evidence, when his Honor, both at the time of receiving it, and in his charge, gave such full and clear explanations as to its purport and effect. For illustration: It becomes material to show that A was in the city of Raleigh on a certain day ; may not B testify that although he cannot fix the day of the month, yet he is sure that he saw A in the city on the day that C was killed ? And then may not D be allowed to fix the exact date of the death of C? In all this there is no imputation on the character of A. We are not to presume that juries are so ignorant as not to understand plain instructions, or so corrupt as to disregard proper instructions. After a careful examination of the whole record, in favor of life, we are forced to the conclusion that there is no error.

Let this be certified, &c.

PER CURIAM.                    Judgment affirmed.