The will of the decedent John Johnson was proved in common form, and upon a caveat being filed the issue joined thereby was sent up by the clerk to the next term of the Superior Court for trial. The caveators assigned as reasons why the alleged will was not the will of the decedent: (1) That he was not at the time of its execution, of sound mind and disposing memory; (2) That he was unduly influenced in its execution by those by whom he was surrounded and especially by his wife, the sole devisee and legatee. The first exception of the caveators was to the ruling of his Honor, that it was not necessary for the propounders to file an answer to the caveat.
No answer was necessary. The issue as to whether a paper writing is the will of the decedent is made up upon the filing of the caveat. Eaton's Forms, p. 446.
The next exception was to the reading of the paper writing in evidence; the caveators contending that the witness Wimbish who was also a subscribing witness to the script, had not identified the same as the paper which was really executed by the decedent. There is nothing in the exception. The writing was shown to the witness and he said that the same was the paper which the defendant signed as his will after it had been read over to all present, and that the witness and D. S. Osborn, now deceased, the other witness to the paper, signed the same in the presence of the decedent and at his request. The witness Wimbish, on cross-examination by the caveators, was asked what he had said when the will was proved before the clerk as to the mental capacity of the decedent. His Honor properly refused to allow this question to be put. The witness had not been asked on his examination in chief a word about the mental condition of the decedent, nor on his cross-examination. The only purpose of the question must have been to contradict the witness and he had made no statement about it one way or another.
Another exception was to the refusal of the Court to allow (273) Taylor, a witness for the caveators, to testify as to what Osborn, a deceased witness to the execution of the will, had told him about the mental condition of the decedent, both before and after the execution of the paper-writing. His Honor's ruling was correct. The testimony offered was nothing but hearsay evidence.
The exceptions from 11 to 27 were to the form of questions put to *Page 187 
witnesses by the propounders to show testamentary capacity. They were leading — all of them — but the Judge, in his discretion, allowed them to be asked and we cannot review them.
At the close of the evidence the caveators asked the Court to instruct the jury as follows: "1. That there has not been evidence sufficient to admit the alleged will to probate, in that evidence of F. B. Wimbish, the subscribing witness, is not sufficient to establish the due execution of the same. 2. There is no evidence in this case that the alleged will has been admitted to probate and, this being true, the alleged will cannot be offered in evidence in this suit." The Court properly refused to give the instructions asked. As we have already said, the testimony of the witness Wimbish was sufficient to have the will put in evidence for the purpose of establishing its execution by the decedent. He identified the paper, saw the decedent sign it after it had been read over to him, and both himself and Osborn, the other subscribing witness, signed it in the presence of the decedent and at his request. The probate of the will before the clerk was a matter totally immaterial in its relation to the trial in the Superior Court. The result of the trial in the Superior Court was to be the overthrow of the alleged will or its probate afresh in that court. There is no merit in exceptions 30, 31, 32, 33, and 34.
The caveators made exception to that part of his Honor's (274) charge where he said, "was he (said Johnson) able to understand what he was about? If so, then he was of sound mind and memory within the meaning of the law; if not, he had not testamentary capacity." This exception was a part of eight lines immediately connected together, the whole reading as follows: "Did he, the said Johnson, at the time of the execution of the script or writing in question, have sufficient mental capacity to understand the nature and character of the property disposed of? To whom he was giving his property and how he was disposing of the property? Was he able to understand what he was about? If so, then he was of sound mind and memory within the meaning of the law; if not, then he had not testamentary capacity." But if the detached portion of the charge, which was the subject of the exception, had stood alone, and not in conjunction with the other part which we have quoted above, it would not be error (or if error, a harmless one), for, in other parts of the charge, his Honor expressed himself to the jury upon the sufficiency of testamentary capacity, in words that have stood the test of our decisions — as, for instance, he told them "the law is, that to be of sound and disposing mind and memory, so as to be capable of making a valid will, the deceased must at the time of executing the paper-writing have had sufficient mental capacity to understand the nature and character of the property disposed of, to whom he was willing it, and how he was disposing of his property." In another place *Page 188 
he said, if, at the time he had the capacity to know what he was doing, and was capable of understanding the nature and character of the property disposed of, to whom and in what way he was disposing of his property, then his mental capacity would be sufficient. The exception can avail nothing.
The Court, in the long and full charge to the jury, among other (275) things, said: "If the jury believe the evidence as to the formal execution of the alleged will, as explained in these instructions, and that the testator knew the contents of the same, and if, after a consideration of all the evidence in the case, a want of testamentary capacity in the testator has not been shown, and if it has not been shown that undue influence was exerted upon the testator at the time of the execution of the alleged will, then the jury will answer the issue, `Yes,' otherwise, `No.'" The defendant excepted to that instruction on the ground that it was misleading and that it placed upon the caveators the burden of proving both the want of testamentary capacity and of undue influence, and they insisted that the jury should have been instructed that if the caveators had shown either want of testamentary capacity or undue influence, then the jury should have found for the caveators. If the charge on the whole was not so full and clear, on the point to which the exception is directed, we would have no hesitancy in ordering a new trial, for the reason set out in the exception. But, upon reading the whole charge, it is perfectly clear that on this point the jury could not have been misled. The language used by the Judge, when taken in connection with the balance of the charge, was so manifestly an inadvertence that it could have produced no harm. He told them over and over again, in substance, at length, and so clearly that they could not misunderstand him, that testamentary incapacity alone would avoid the paper-writing alleged to be the will, and that undue influence alone exerted by his wife or any other person would make the paper-writing, not his will, but that of another.
On the argument, one of the counsel for the caveators commented upon the failure of H. A. Crenshaw, the person named as executor in (276) the will, to go upon the stand as a witness for the propounders to show that the decedent had testamentary capacity. It had been shown on the trial that Crenshaw was the brother-in-law of the decedent, and that he delivered to the attorney who drew the will, a message from decedent to prepare the will in the manner in which it was drawn. The attorney for the propounders, in his argument to the jury, replied to that of counsel for the caveators, and asserted that Crenshaw was not a competent witness under section 590 of The Code. Neither side had offered Crenshaw as a witness. Upon the conclusion of the argument the Court took a recess until next morning, when, upon its being convened, the counsel for the caveators submitted in writing two instructions, which *Page 189 
they called special, as follows: "1. H. A. Crenshaw was a competent witness in this case. Halliburton v. Carson, 100 N.C. 99." "2. Counsel had the right to comment on his not going on the stand." The Court refused to give the instructions and did not advert to the matter in the charge. There was no error in refusing these instructions. Crenshaw had not been tendered as witness, and the question of his competency as a witness, under section 590, could not have been raised in an orderly manner unless he had been so tendered, and his testimony objected to. If the courts were compelled in the trial of jury causes, after argument begun, to stop and submit instructions whenever opposing counsel in their arguments to the jury differed as to questions of law not raised in an orderly way on the trial, there would be no end to the controversy. The Judge was called upon by the instructions prayed for to decide a question of evidence that had not arisen in the due course of the trial, to decide which one of the attorneys was correct in his construction of a section of The Code. As the counsel raised this question themselves, out of the due course of the trial, they were very properly (277) allowed by the Court to settle it among themselves.
The matter which gave rise to the 39th and last exception was this: Dr. Taylor, a witness for the propounders, had testified, over the objection of the caveators, that he was very much surprised when he heard that this suit was brought, and that he never dreamed that the testator was of unsound mind. The Court in the charge told the jury that they should not consider Dr. Taylor's testimony, neither should they consider the remarks of counsel passed upon such excluded testimony. The caveators alleged that the ruling of the Judge was erroneous, in that after the evidence was admitted and after counsel for the propounders had commented upon it, it was too late to withdraw it from the jury, because such a course could not but have had the effect of impressing the jury to such a degree as to make it almost impossible to counteract the effect by a withdrawal of the evidence. This Court had decided that the Judge has such right. Wilson v. Mfg. Co., ante, 95, and cases there cited. Upon a review of the whole case we find no error which, in our opinion, could have influenced the finding of the jury, and the judgment is
Affirmed.
Cited: Waters v. Waters, 125 N.C. 591; S. v. Ellsworth, 130 N.C. 691;Gattis v. Kilgo, 131 N.C. 208; Willeford v. Bailey, 132 N.C. 406;Moore v. Palmer, ib., 977; Westbrook v. Wilson, 135 N.C. 404, 405;Parrott v. R. R., 140 N.C. 548; In re Thorp, 150 N.C. 492; Daniel v.Dixon, 161 N.C. 381; S. v. Cobb, 164 N.C. 422; Howell v. Solomon,167 N.C. 592; In re Rawlings, 170 N.C. 61. *Page 190