## IN RE WILL OF JANE S. RAWLINGS.

(Filed 10 November, 1915.)

**1. Wills—Caveat—Separate Issues—Judgments—Sufficiency as to One Issue—Appeal and Error.**

In this action to caveat a will, involving the questions of undue influence upon and the mental capacity of the testator at the time, the issues submitting separately these two phases with a third issue as to whether the paper-writing and every part thereof was the last will and testament of the deceased, are approved; and the negative answer of the jury to the second issue being free from error and sufficient for judgment in caveator's favor, errors of law committed by the court on the other two issues become immaterial.

**2. Evidence—Depositions—Notice—Persons Named "and Others."**

Where depositions are taken upon notice to the adverse party to the proceedings that certain named persons "and others" will be examined, the testimony of other witnesses than those specified may be read upon the trial, and exception on the ground that they were not named in the notice will not be sustained.

**3. Wills—Mental Capacity—Evidence—Nonexpert Witnesses.**

Upon the issue of the mental capacity of the testator at the time he executed his will, the evidence necessarily takes a wide range, and the courts are liberal in allowing persons who were acquainted with the tes-

tator to give in evidence their opinion thereof; and witnesses who are not subscribing witnesses to the will are competent, though they are not expert in such matters, to testify to the mental condition of the testator if they have had adequate opportunity for observation and forming a judgment.

**4. Wills—Mental Capacity—Evidence—Married Insane Person—Appeal and Error—Harmless Error.**

Upon the issue of the mental capacity of a testatrix in executing a will, evidence that she had theretofore married a man who had several times been an inmate of an insane asylum was harmless, and not prejudicial to the caveator. But were it otherwise, _semble_, it may be considered, with the other testimony in this case, as being some evidence of unsoundness of mind.

**5. Wills—Mental Capacity—Trials—Evidence—Questions for Jury.**

Testimony of witnesses having had opportunity to observe the testatrix whose will is attacked for her mental incapacity at the time of its execution, that she was easily influenced, had tried to drown herself; that she was like a child six or seven years of age, her mind was like an imbecile; that she did not have, in their opinion, sufficient mental capacity to make a will, or know the kind and value of her property, etc., is held abundantly sufficient to sustain a judgment on that issue in the caveator's favor.

**6. Wills—Mental Capacity—Evidence—Appeal and Error—Harmless Error.**

In this action to caveat a will, the introduction of the personal tax returns of the propounder, made two years after the death of the testator, is held to be harmless; and the introduction in evidence of conveyances, deeds in trust, etc., made by the testator to the propounder was for the purpose of showing confidential relations arising under the issue as to undue influence, and not affecting the judgment sustained under the issue as to mental capacity of the testator.

**7. Instructions—Wills—Mental Capacity—Trials—Burden of Proof—Appeal and Error—Harmless Error.**

Where the charge of the court to the jury, in an action to caveat a will, construed as a whole, clearly, unmistakably and properly shifts the burden of proof on the caveator to show the mental incapacity of the testator, exception to an isolated portion thereof, which standing alone would be erroneous, will not be sustained.

APPEAL by propounder from _Justice, J.,_ at the June Term, 1915, of ROCKINGHAM.

Issue of _devisavit vel non,_ raised by a caveat to the will of Jane S. Rawlings, tried upon these issues submitted without objection:

1. Was the execution of the paper-writing purporting to be the last will and testament of Jane Spaulding Rawlings procured by the fraud and undue influence of John D. Huffines? Answer: Yes.

2. Did Jane Spaulding Rawlings, at the time of the execution of said paper-writing, to wit, 3 November, 1911, have sufficient mental capacity to execute the same? Answer: No.

3. Is the paper-writing propounded, and every part thereof, the last will and testament of Jane Spaulding Rawlings? Answer: No.

From the judgment rendered, the propounder, Huffines, appealed.

*In re* RAWLINGS' WILL.

*C. O. McMichael, Manly, Hendren & Womble for the propounder.*
*H. R. Scott, King & Kimball for the caveators.*

BROWN, J. The wise course pursued by his Honor in dividing the issues relating to undue influence and mental capacity, instead of submitting the one issue of *devisavit vel non,* has rendered it unnecessary to order a new trial in this case, and has enabled us to affirm a judgment which, tested by the great weight of the evidence in the record, ought to be affirmed.

The evidence discloses that the testatrix, Jane Spaulding, was wholly illiterate and never able to either read or write, and not able to manage her own small estate. In 1906 she met J. D. Huffines, the propounder, a real estate dealer in Reidsville, who soon became her agent and manager of her affairs. That he was her business manager and trusted agent is proven by the language of the will, itself, an instrument written at the propounder's instance and by his confidential attorney, and which devised to the propounder practically the entire estate.

There is most abundant evidence to justify the verdict of the jury on the first issue of undue influence, as well as upon the second issue, relating solely to mental capacity; but it is unnecessary to discuss the many assignments of error bearing on the first issue, as it is well settled that where the finding upon one issue is sufficient to justify the judgment, a new trial will not be granted.

We will, therefore, confine our review of the case to those assignments of error bearing upon the second issue, and which are noticed in the propounder's brief. It is the rule of this Court to consider only those assignments that are set out in the brief. There are thirty-seven assignments of error in the record, but only a few relate to the second issue, and only a few of these are noticed in the propounder's brief.

It is insisted that his Honor erred in admitting the depositions of the witnesses Loman A. Ball and Agnes Smith because their names are not inserted in the notice to take depositions. The notice is in the usual form and directs the commissioner to take the depositions of John Brannen and several other witnesses by name "and others." There is no merit in the assignment. The point has been expressly decided against the propounder so long ago as *McDougald v. Smith,* 33 N. C., 576. Discussing the case, the Court said:

"In this case, he can rightfully make no such allegation, but was apprised that the examination would not be confined to the witnesses named. It was his duty to attend, or be properly represented, that he might take care of his interest. The act of our Legislature points out no form in which the notices shall be drawn. It simply directs that notice shall be given the adverse party of the time and place when the 'com-

mission shall be executed.' So far as the practice under it can be considered a construction of it, the notice complained of is proper. We see no provision in the act forbidding it, and no evil or danger resulting from it. The defendant, however, further complains on this point that the persons named in the notice were not examined. We know of no law requiring a party to examine all or any of the witnesses named in the notice. As well might it be required of a party to examine all the witnesses he summons on a trial before a jury, and who are in attendance."

See, also, *Jeffords v. Waterworks Co.,* 157 N. C., 13.

His Honor permitted the following questions to be asked and answered:

(1) In your judgment how was her mind when you visited her in North Carolina compared with her mind when you and she were at home together?

(2) In your opinion do you think she was capable of disposing of her property by will and understanding the consequences and effect of her so doing?

(3) In your opinion state whether or not she had sufficient mental capacity to know the kind and nature and value of her property, or to make disposition of it by sale and know what she was about?

These questions are permissible, for it is well settled that a non-expert witness, although not a subscribing witness and not present at the execution of the will, may testify to the mental condition of the testatrix, if he has had adequate opportunities for observation and forming a judge. Page on Wills, section 390.

In cases of this character, the evidence of necessity takes a wide range and the courts are liberal in allowing persons who are acquainted with the testatrix to testify as to their opinion of her sanity. The form of these questions is in substantial accord with the adjudications of this Court. *McLeary v. Norment,* 84 N. C., 235; *Crenshaw v. Johnson,* 120 N. C., 274; *Bond v. Manufacturing Co.,* 140 N. C., 381; *Bost v. Bost,* 87 N. C., 477; *Morris v. Osborne,* 104 N. C., 609 at 612; *Clary v. Clary,* 24 N. C., 78; *S. v. Ketchey,* 70 N. C., 621.

The objection that his Honor permitted a witness to testify that the testatrix's second husband, prior to the time she married him, had been in an insane asylum two or three times is immaterial and harmless. It seems to us that it had no bearing upon the issue one way or the other. It might, however, be regarded as some evidence of the mental condition of the testatrix if it is shown that she married an inmate of an insane asylum. None of these assignments are mentioned in the propounder's brief. Nevertheless we have deemed it proper to notice them, as they have a bearing upon the second issue.

Notwithstanding the contention of the propounder to the contrary, we think, upon an examination of the record in this case, that the evidence of a lack of mental capacity upon the part of the testatrix is very strong and it is difficult to conceive how the jury could have come to any other conclusion than they did reach in answering the second issue.

A large number of witnesses, who were neighbors of the alleged testatrix from the time of her removal from Ohio to Ruffin, N. C., in 1873, and until her removal again to Reidsville in 1906, had been examined. All of them have testified that they have known her a large part of her life; that she was a person easily influenced by others; that she had tried to drown herself; and that in their opinion she did not have sufficient mental capacity to make a will or to transact business. Some of the witnesses say she would have to be entertained like a child of six or seven years of age; that her mind was very weak and imbecile from birth. One witness, a physician, testified that the testatrix did not have sufficient mental capacity to know the kind and nature and value of her property or to make a disposition of it by will, and that she generally did not know what she was about. It is useless to discuss this feature of the case any further. Any one reading the record must be impressed with the strength of the testimony offered by the caveators bearing upon that issue.

It is objected that his Honor permitted the introduction of the personal tax returns of the propounder, made two years after the death of Mrs. Rawlings. We fail to see how this is material, and we regard it as perfectly harmless. The assignments of error relating to the introduction of a number of deeds, conveyances and deeds in trust, made by the testatrix to the propounder and his wife, were evidently offered for the purpose of showing that Huffines was the business agent of the testatrix (a fact which is proven by the will, itself) and is evidence upon the first issue. They have no bearing whatever upon the second issue.

The objection to his Honor's charge that he required the propounder to show that the testatrix knew and approved of the contents of the will is immaterial because the court confined it strictly to the first issue. The same can be said of the other exceptions to the charge except one which is embraced in Assignment of Error No. 31. His Honor, referring to the second issue, said to the jury: "If they have failed to so satisfy you, and the propounder has satisfied you that she did have sufficient mental capacity, you will answer the second issue 'yes.'" This is but an isolated extract from the charge of the court upon that issue. His Honor's instructions upon that issue were very full, clear and explicit, and strictly in accord with the repeated decisions of this Court.

Upon the quantum of intellect necessary to execute a will or a deed, the instructions given are very favorable to the propounder. His Honor said: "It does not require the highest degree of intelligence to be able to execute a will or deed, nor does it require a high degree of intelligence to do it. It is not a question of illiteracy—people who can neither read nor write, if they are otherwise qualified mentally, have the same right and power to make a will that a man who knows all the languages does. A man who is utterly illiterate, if a man of good sense and knows what he wants and what he is about and does what he intends to do, has as much right to make a will or deed as the most thoroughly educated person in all the land.

"Now, how much capacity does it require? We find it does not require education. That is not the question—but how much mental capacity does it require? The court has said that it does not require the highest degree of intelligence or mental capacity, nor does it require a high degree. But if the party making the will or deed has sufficient understanding to know what she is about and to understand what property she has and understand to whom she desires to convey it or devise or bequeath it, and the extent and consequence of her act, and what property she is conveying, then she would have sufficient mental capacity to make a will."

In concluding his remarks upon this second issue, the court said:

"The question here is, did she at the time of the execution of that will have sufficient mental capacity to understand what property she had, to whom she desired to convey it in the will, and the nature and character of the transaction and the result and consequence of it? If she did, then she had sufficient capacity to make the will. The burden of that is upon the caveators to satisfy you that she did not have sufficient mental capacity to make the will. The law requires them to prove it, and they contend they have proved she did not have it. If they have satisfied you of that, then you must answer the second issue 'No.' If they have failed to so satisfy you, and the propounder has satisfied you that she did have sufficient capacity, you will answer the second issue 'Yes.'"

It is manifest that his Honor did not put the burden of proving the negative of the second issue upon the propounder. He distinctly told the jury that the burden of proving that issue is upon the caveators and that they must satisfy the jury that the testatrix did not have sufficient mental capacity to make the will; that the law requires the caveators to prove it; and they contend that they have proved that she did not have such capacity. The concluding sentence of his Honor was an inadvertence of speech which could not possibly have misled the jury. The entire instruction upon the burden of proof was too plain and unequivocal for the jury to have misunderstood it.

The 35th assignment of error is to the part of the charge of the court to the effect that the will of the testatrix does not purport to bear her own genuine signature, but simply her cross-mark. That portion of the charge does not bear at all upon the second issue, and as his Honor expressly told the jury to confine it to the third issue, we do not deem it necessary to discuss it.

Upon a review of the whole record, we find

No error.