F. T. HYATT, JEFFERSON HYATT, R. E. HYATT, AND P. E. HYATT
v. MRS. JOHN B. HYATT.

(Filed 22 January, 1924.)

**1. Wills—Testamentary Capacity—Evidence—Letters of Testator.**

While the courts allow wide range in allowing in evidence testimony of nonexpert witnesses as to the testator's mental capacity sufficient to make a valid will, upon caveat thereof, it does not extend to letters sought to be introduced in evidence thereof, the contents of which are not supported by the testimony of a witness, but rests alone upon the evidence that they were in the handwriting of the testator.

**2. Wills—Revocation—Later Wills—Evidence—Burden of Proof.**

Where the caveators of a will seek to set aside the will being propounded, on the ground that the testator had made a later will revoking it, the burden is on them to show the making and present existence of the later will, and that it revoked the one theretofore made.

**3. Same—Presumptions.**

Where the caveators to a will have shown the existence of a later will which, they contend, revoked the will being propounded, which was last seen in the possession of the testator and after his death cannot be found, it will be presumed that he had destroyed it with his intention to revoke it.

THIS was a proceeding heard upon a caveat to a paper-writing purporting to be the last will and testament of John B. Hyatt, deceased, heard at September Term, 1922, before *Shaw, J.,* and a jury, of HAYWOOD County. Appeal by plaintiffs, caveators.

*J. W. Ferguson and Carter, Shuford & Hartshorn for plaintiffs, caveators.*
*Morgan & Ward and Alley & Alley for defendant, propounder.*

CLARKSON, J. The usual issue was submitted to the jury—*devisavit vel non:* "Is the paper-writing offered by the propounder, or any part

8—187

thereof, and if so, what part, the last will and testament of the said John B. Hyatt, deceased?" The jury answered the issue, "Yes, every part of it."

Plaintiffs, caveators, assign the following errors:

"No. 1 is addressed to the refusal of the court to admit in evidence, for the purpose which they were offered, the letters from the alleged testator, John B. Hyatt, to Mrs. W. A. Whitner, and the accompanying envelope, as identified by the witnesses; and the caveators assign said ruling as error, for that, as caveators allege, said ruling is contrary to law.

"2. No. 2 and No. 3 are addressed to those portions of his Honor's charge set out precisely in said exceptions, and which deal with the questions of law arising upon the contention of the caveators that in the event the jury should find that said John B. Hyatt had testamentary capacity and that he had executed the script propounded as his will, that the jury should nevertheless find from the evidence that said will had been revoked, in whole or in part, by a subsequent will. Said exceptions No. 2 and No. 3 are grouped as proper to be considered together; and the caveators assign the portions of the charge so excepted to as error, for that, as caveators allege, the same are contrary to law and the evidence in the case."

The following questions were asked Lucy A. Hyatt (Mrs. John B. Hyatt) on direct examination:

"Q. State to his Honor and the jury whether you know of any other will that your husband ever made than the one in question. Answer: On Sunday before he died on Thursday, he had a severe attack with his heart, and Dr. Roberts was called in and told him he was in a very bad condition, and after the doctor left he called me and told me, 'I am not going to last long, and after I pass away I want you to go to Waynesville and get the will in the safety box there and probate it in Washington and Waynesville, for I have never made any other will to my property.'

"Q. You don't know of any other will? Answer: No, sir."

On cross-examination she said:

"Q. Do you know W. A. Whitner, of this city? Answer: I have seen him on the streets of Waynesville—a policeman.

"Q. There has never been any undue familiarity or improper relation between you and Mr. Whitner? Answer: There certainly has not.

"Q. You never had any compromising correspondence with him? Answer: Never had any correspondence of any kind.

"Q. Your husband never threatened to divorce you on account of relations and correspondence with Whitner? Answer: He certainly did not.

"Q. Did you ever break down and cry to your husband and beg him not to divorce you, and tell him if he didn't divorce you—if he would give you another trial—that you would not hold any correspondence with W. A. Whitner, and that you would rent your property in Waynesville and not come here except when he did? Answer: I never had any such conversation as you relate, in my life, with him.

"Q. Never had any occasion for any such occurrence? Answer: There was not.

"Q. He never promised to give you a probational trial if you would do any of these things? Answer: There was never a question of anything of that kind that made it necessary for such terms."

The caveators introduced two letters·written by J. B. Hyatt, deceased, sent from Washington, D. C., dated 16 November, 1918, to Mrs. W. A. Whitner, Waynesville, N. C. The second letter commenced, "I wrote you Saturday night," etc. The last letter, the envelope was postmarked "Washington, D. C., 17 November, 1 a. m., 1918."

The first assignment of error is the refusal of the court below to admit these letters in evidence. The record shows: "Upon the uncontroverted identification of said letters, signatures and envelopes, the same were offered in evidence on behalf of the caveators, with the qualification and for the purposes stated by counsel for the caveators, as follows: These papers, identified by the witness, were offered in evidence solely as bearing upon the question of the testamentary capacity of John B. Hyatt, deceased, and for no other purpose. In connection with the offer of these letters, we wish to offer the calendar for the year 1918, showing that the 16th day of November was on Saturday, and the 18th of November was, of course, on the Monday following. We offer this, not for any purpose of impeachment, but solely as bearing upon the testamentary capacity of the testator."

The evidence was clearly incompetent for the purpose of impeachment, and was not offered for that purpose, but solely bearing upon testamentary capacity of the testator.

Were they competent for that purpose?

The caveators, in their brief, say: "The wide latitude allowed in the admission of evidence in cases of this sort has been frequently declared by this Court," and cites *Rawlings, Burns,* and *McLeary cases.* We do not think these cases are in conflict with the ruling of the court.

*In re Rawling's Will,* 170 N. C., 61, on this question, is as follows:

"His Honor permitted the following questions to be asked and answered:

"1. In your judgment, how was her mind when you visited her in North Carolina, compared with her mind when you and she were at home together?

"2. In your opinion, do you think she was capable of disposing of her property by will and understanding the consequences and effect of her so doing?

"3. In your opinion, state whether or not she had sufficient mental capacity to know the kind and nature and value of her property, or to make disposition of it by sale and know what she was about?"

These questions are permissible, for it is well settled that a nonexpert witness, although not a subscribing witness and not present at the execution of the will, may testify to the mental condition of the testatrix if he has had adequate opportunities for observation and forming a judgment. Page on Wills, sec. 390.

In cases of this character the evidence of necessity takes a wide range, and the courts are liberal in allowing persons who are acquainted with the testatrix to testify as to their opinion of her sanity. The form of these questions is in substantial accord with the adjudications of this Court. *McLeary v. Norment,* 84 N. C., 235; *Crenshaw v. Johnson,* 120 N. C., 274; *Bond v. Mfg. Co.,* 140 N. C., 381; *Bost v. Bost,* 87 N. C., 477; *Morris v. Osborne,* 104 N. C., 609, at 612; *Clary v. Clary,* 24 N. C., 78; *S. v. Ketchey,* 70 N. C., 621.

*In re Burns' Will,* 121 N. C., 336, decides: "Where, on trial of an issue of *devisavit vel non,* proof of the sanity or insanity is submitted to the jury, the fact that the testator disinherited all of his children save one, to whom he left all of his property, is competent evidence to be passed upon by the jury as bearing upon the capacity of the testator, and hence is as much the proper subject of discussion by counsel, in the argument, as any other part of the testimony."

*McLeary v. Norment, supra,* decides: "One Harriet Alexander, a niece of the plaintiff, and introduced as a witness in her behalf, testified to her aunt's want of mental capacity to make the deed, and that her opinion was formed from conversations and communications between them. The plaintiff's counsel then proposed to prove those conversations and communications, in order that the jury might see whether the opinion was well founded, and the weight due to it as evidence. The court, on objection, ruled out the offered testimony, and the plaintiff excepted. It is settled in this State that witnesses, whether experts or not, who have had opportunities, from personal intercourse with another, to form an opinion of his legal competency of mind, may express their opinion and state the facts upon which it is based."

If these letters had been allowed to be introduced in evidence, they were more in the nature of contradiction to the testimony of Lucy A. Hyatt on her cross-examination, and for that purpose admittedly incompetent. From a careful reading of the letters, they show suspicion and jealousy, but the record shows that the husband and wife lived together

several years after they were written, and no suggestion other than in harmony. Under the facts and circumstances in this case, we do not see how the letters were material on the question of testamentary capacity. We think that the cases above cited by the plaintiff do allow wide latitude generally on the question of testamentary capacity, and for that reason quote them; but for the purpose offered, to show testamentary capacity, the letters go a "bowshot" beyond, and we can find no case like the facts here sustaining the caveators' contention. We think the court below made no error in excluding this evidence.

Second assignment of error. This was to the charge of the court below, which is as follows: "The burden is upon the caveators to satisfy the jury by the greater weight of the evidence that there was another will, and that the will also revoked the former will. And the burden is also upon the caveators to satisfy the jury by the greater weight of the evidence that the subsequent will was not destroyed by Hyatt."

To understand this charge we must consider the facts. The plaintiffs, caveators, were contending that John B. Hyatt had made a different will than the one offered for probate (dated .... March, 1911), and to which a caveat was entered by plaintiffs and which they were trying to set aside, in the present case, on the ground that John B. Hyatt did not have testamentary capacity. The plaintiffs were contending that about five or six years before the trial, Lucy A. Hyatt, the propounder of the will in controversy and beneficiary under it, told Robert E. Hyatt, one of the plaintiffs, caveators, who had a conversation with her in which "she said that John had made a will." Said that he was so thoroughly disgusted and had such a contempt for his brothers he had given the Washington property to her and the North Carolina property to my son, that is, Fred Hyatt at Greensboro.

"Q. Dr. Fred C. Hyatt? Answer, Yes.

"Q. Did you hear her make that statement to any one else? Answer, Yes, she went on up to my house and made the same statement to my wife, that he had given the property in Washington to her and the land in North Carolina to Fred."

In the instant case the propounder offered the will, dated .... March, 1911, of John B. Hyatt, and proved its execution by Joseph H. Bean and Mrs. Maude Bean, the witnesses to the will. The will was in the handwriting of John B. Hyatt. The plaintiffs, caveators, undertook, by the testimony of Robert E. Hyatt, as above stated, to show that there was another will and that that will revoked the will which the propounder offered for probate, and was different in terms. The North Carolina property under it was left to Dr. Fred C. Hyatt at Greensboro, and the Washington property to Lucy A. Hyatt.

The court below charged the jury that the burden was on the caveators to satisfy them by the greater weight of the evidence (1) that there was another will; (2) that the will revoked the former will; (3) that the subsequent will was not destroyed by Hyatt.

In other words, the caveators must show, by the greater weight of the evidence, that there was a later will then in existence and that that will revoked the former will of March, 1911. We think this charge correct under the facts in this case.

The case of *In re Shelton,* 143 N. C., 227, is favorable to the charge given. In that case the paper-writing executed by F. M. Shelton, 15 July, 1902, was offered in evidence as his will. The following words were written in ink on the margin thereof, to wit: "This will I this day make void and of no effect. 16 January, 1905. F. M. Shelton." *Brown, J.,* said: "When the paper-writing purporting to be the testator's will was offered by the propounder for probate he did not necessarily or in fact offer the revocatory words written on the margin of the paper containing the will. He offered only the will dated 15 July, 1902. This must necessarily be so, for the revocation is not a part of the will, and had he been compelled to offer it as a part of the will, because written on the margin of the same paper, the effect would be to destroy the very will the propounder was offering for probate. The revocation was not a cancellation technically, nor was it a mutilation, and, therefore, needed no explanation upon the part of the propounder of the will. After the propounder had offered the will and proved its execution as required by law, if the jury believed the evidence, he was entitled to a verdict to the effect that the paper-writing was the last will and testament of F. M. Shelton, unless the contestant could prove that it had been revoked. The burden of proving that the will had been legally revoked was as much upon contestant as it would have been to prove undue influence, had such been the ground of contest. It was then up to contestant to go forward with his proof and to offer the revocation in evidence and to prove its execution, or that it was all in testator's handwriting and found in a secure place, as required by statute."

The third assignment of error.

This was to the charge of the court below, which is as follows: "The law is: If a man executed a subsequent will, and at the time of his death said paper-writing cannot be found among his papers in the absence of evidence that it was lost by some parties who were interested, the presumption is he destroyed it. If he made any such paper and subsequently did destroy it, even though it may be in conflict with a former paper-writing, the former paper-writing will stand, provided he had sufficient mental capacity to execute it according to law."

From the evidence in this case we think this charge correct. Lucy A. Hyatt testified, "After the doctor left he called me and told me, 'I am not going to last long and after I pass away I want you to go to Waynesville and get the will in the safety box there and probate it in Washington and Waynesville, for I have never made any other will to my property."

*Pearson, J.,* in *Marsh v. Marsh,* 48 N. C., 78, says: "As wills are ambulatory, and have no operation until the death of the testator, it is difficult to see how the execution of a second will, which is afterwards destroyed by the testator, can in anywise, affect the validity of a will previously executed. Both are inactive during the life of the testator, and the cancellation of the second, it would seem, must necessarily leave the first to go into operation at the testator's death. Nor is it perceived how the fact, that the second contained a clause of revocation, can alter the case; because that clause is just as inactive, and inoperative as the rest of it, and so continues up to the time that the whole is canceled." Jarman on Wills, Vol. 1, 5th Am. Ed., p. 295; *In re Wolfe,* 185 N. C., 565; *In re Will of William Love,* 186 N. C., 714.

A will last seen and known to have been in the possession of the decedent, which cannot be found after his death, will be presumed to have been destroyed by him and with an intention of revoking it. 14 Enc. of Ev., p. 440; *In re Hedgepeth,* 150 N. C., p. 251.

The court below from the record seems to have tried the case with care. We can find

No error.