IN THE MATTER OF THE WILL OF`ANNIS S. KEMP.

(Filed 6 January, 1953.)

**1. Wills § 23b—**

The striking of testimony of a witness that deceased, who was a friend, failed to recognize him when he met her on the street shortly after the date of the script, will not be held for prejudicial error justifying a new trial when the record contains the further testimony of the witness that during the course of the conversation immediately ensuing she did recognize him.

**2. Same—**

Testimony that a brother of deceased had been treated at a hospital for a mental disorder is incompetent on the issue of deceased's mental capacity when the evidence further shows that the mental disorder with which he was suffering was not hereditary in character.

**3. Same—**

Lay witnesses who have had reasonable opportunity for observation may express their opinions as to the mental capacity of the alleged testator in a caveat proceeding, and may also detail observed facts about deceased's conduct or language upon which their opinions are based.

**4. Same: Evidence § 13—**

In a caveat proceeding, the attorney who drew the script for deceased is competent to give his opinion that deceased was of sound mind at the time of the execution of the script, and may detail the basis for his conclusion, the testimony not being within the rule of privileged communications between attorney and client.

**5. Attorney and Client § 7—**

Where the attorney who drew the script withdraws from the caveat proceedings, he is competent to testify for propounder in regard to the mental capacity of deceased, and his act in so doing does not violate either the letter or spirit of the rules and regulations of the State Bar.

**6. Wills § 23b: Evidence § 22—**

Objections to questions which amount only to argument with the witness are properly sustained.

**7. Wills § 23b—**

The paper writing purported to dispose of deceased's property to a named hospital. In this caveat on the ground of mental incapacity, the cross-examination of witnesses for propounder in regard to whether the hospital had any public funds was properly excluded as irrelevant.

**8. Appeal and Error § 39e—**

The exclusion of testimony will not be held prejudicial when it appears that the answer of the witness could have no material bearing on the issue.

**9. Wills § 25—**

The inadvertent use of the words "will" and "testatrix" in the charge of the court in a caveat proceeding will not be held for reversible error when

the charge construed as a whole is not prejudicial and the jury is emphatically instructed that it was the sole judge of the facts.

**10. Appeal and Error § 6c (6)—**

Asserted inaccuracies in the court's statement of the contentions of the parties must be brought to the trial court's attention in apt time to afford opportunity for correction in order to be considered on appeal.

Parker, J., took no part in the consideration or decision of this case.

Appeal by caveators from *Halstead, Special Judge,* and a jury, at January Term, 1952, of Randolph.

Caveat to script propounded for probate as an attested will.

These are the essential facts:

1. Annis S. Kemp, an unmarried woman of the age of 69 years, died on 8 January, 1949, while domiciled in the Town of Asheboro, in Randolph County.

2. On 21 January, 1949, Seth B. Hinshaw presented the script in controversy to the Clerk of the Superior Court of Randolph County, asserted that it was executed by Annis S. Kemp as her attested will in conformity to G.S. 31-3, and asked that it be legally established as such. The Clerk thereupon admitted the paper to probate in common form as the last will of Annis S. Kemp. The document bears date 21 December, 1945, names Seth B. Hinshaw executor, and contains this dispositive clause: "I give and devise all my property, both personal and real, to the Trustees of the Randolph County Hospital, Asheboro, N. C., for the use, benefit, and treatment of orphan children under twenty-one years of age, it being my desire and purpose in making this will to carry out the wishes of my deceased brother, D. J. Kemp, to give our property to the use and benefit of the unfortunate orphan children of Randolph County who need medical care and hospital treatment."

3. On 6 June, 1950, Wilsie Carraway, Etha Glasgow Hall, Roy Z. Pugh, Vernie J. Pugh, Bertha T. Ragsdale, Hazel P. Sawyer, Carl Trogdon, J. F. Trogdon, Lola T. Underwood, and H. O. Williams, Jr., appeared before the Clerk of the Superior Court of Randolph County, and entered a caveat to the probate of the script, alleging that "said paper writing . . . is not the last will . . . of . . . Annis S. Kemp . . . for the reason that at the time of the purported execution of said . . . writing . . . she was . . . not capable of executing a . . . will . . ., and was not of sound mind and disposing memory." The Clerk forthwith transferred the caveat proceeding to the trial docket of the Superior Court for trial by jury at term upon the issue of *devisavit vel non.* Marvin Brown, Jewell Glasgow Cox, Eli J. Kemp, Myrtle Pugh, and Marie Williams were afterwards made additional parties to the proceeding.

The caveators assert that the persons named in this paragraph would take the property of Annis S. Kemp if the script should be rejected.

4. The proceeding was tried on its merits at the July Term, 1951, of the Superior Court of Randolph County, and the trial resulted in a verdict and judgment in favor of the propounder. The caveators appealed to the Supreme Court and were awarded a new trial for error in the charge. *In re Will of Kemp,* 234 N.C. 495, 67 S.E. 2d 672.

5. The proceeding was heard a second time on its merits by Judge Halstead and a jury at the January Term, 1952, of the Superior Court of Randolph County. The propounder and the caveators offered much testimony at that time in support of their respective claims.

Judge Halstead submitted these issues to the jury: (1) Was . . . the paper writing offered for probate as the last will and testament of Annis S. Kemp made and executed according to law? (2) Did Annis S. Kemp at the time of the execution of said paper writing have sufficient mental capacity to make a will? (3) Is . . . the paper writing offered for probate, and every part thereof, the last will and testament of Annis S. Kemp? The jury answered all of the issues in the affirmative, and Judge Halstead entered judgment establishing the script as the will of the decedent. The caveators excepted and appealed, assigning errors.

*Hugh R. Anderson and H. M. Robins for the propounder, appellee.*
*L. T. Hammond and Ottway Burton for the caveators, appellants.*

ERVIN, J. The caveators assert that the trial judge erred to their prejudice in excluding and receiving evidence, and in charging the jury.

The assignments of error based on rulings upon evidential matters are reviewed in the numbered paragraphs set forth below.

1. E. J. Burkle, a witness for the caveators, testified, in part, that he was a friend of Annis S. Kemp; that he met her unexpectedly in the business section of Asheboro some three months subsequent to the date of the script; that he forthwith greeted her by name; that she did not recognize him when he first addressed her; but that she recalled his identity during the course of a conversation which immediately ensued. The propounder moved to strike out the statement of the witness to the effect that Annis S. Kemp did not recognize him when he first hailed her, and the trial judge sustained the motion. The caveators excepted to this ruling. We take it for granted for the purpose of this particular appeal that the stricken testimony was merely a "short-hand" statement of the opinion of the witness as to the mental state of Annis S. Kemp at the time of their encounter, and that the trial judge committed error in striking the testimony out. Even so, his ruling must be adjudged harmless to the caveators on the present record. The stricken statement was virtually without

probative value because the testimony of the witness showed that Annis S. Kemp fully recalled his identity after a fleeting instant of nonrecognition. It is not conceivable that this negligible bit of testimony would have affected the verdict of the jury in any degree had it remained in evidence on the trial of the proceeding in the Superior Court. Its exclusion, standing alone, certainly does not compel us to inflict upon the parties, the taxpayers, and the witnesses the monstrous penalty of a new trial of this twice-tried proceeding. *Freeman v. Ponder,* 234 N.C. 294, 67 S.E. 2d 292.

2. The caveators offered to prove that Eli J. Kemp, a brother of Annis S. Kemp, had received custodial and medical care at two state hospitals for a mental disorder. The propounder objected, the trial judge sustained the objection, and the caveators excepted. The proffered evidence was rightly rejected. The offer of proof itself affirmatively disclosed that the mental affliction of the brother of the decedent was not hereditary in character, but, on the contrary, was occasioned by "the hardening of the arteries in his brain." In consequence, the proffered testimony had no logical tendency to show that the testamentary capacity of the decedent had been impaired by hereditary insanity. *S. v. Cunningham,* 72 N.C. 469; *S. v. Christmas,* 51 N.C. 471; *In re Meyer's Will,* 184 N.Y. 54, 76 N.E. 920; *Reichenbach v. Reichenbach,* 129 Pa. 564, 18 A. 432; Stansbury on North Carolina Evidence, Section 97; Wigmore on Evidence (2d Ed.), section 232; Annotation: 6 A.L.R. 1486.

3. The propounder called to the stand two general practitioners of medicine and surgery and numerous lay witnesses who were permitted to express their opinions as to the testamentary capacity of the decedent. The caveators assign the admission of this evidence as error. Each of these witnesses had had a personal acquaintance with the decedent, and based his opinion as to her mental capacity on his own observations. Their opinions were given in response to questions framed in accordance with approved precedents. *In re Will of Tatum,* 233 N.C. 723, 65 S.E. 2d 351; *In re Will of York,* 231 N.C. 70, 55 S.E. 2d 791; *In re Will of Stocks,* 175 N.C. 224, 95 S.E. 360; *In re Broach's Will,* 172 N.C. 520, 90 S.E. 681; *In re Rawlings' Will,* 170 N.C. 58, 86 S.E. 794. These things being true, the testimony of these witnesses was rightly received under the rule that a witness, who has had a reasonable opportunity for observation, may express his opinion as to the mental capacity of the alleged testator in a caveat proceeding, even though he is not an expert in mental disorders. *In re Will of Tatum, supra; In re Will of York; supra; Winborne v. Lloyd,* 209 N.C. 483, 183 S.E. 756; *In re Will of Hargrove,* 206 N.C. 307, 173 S.E. 577; *In re Will of Brown,* 194 N.C. 583, 140 S.E. 192; *In re Craig,* 192 N.C. 656, 135 S.E. 798; *Hyatt v. Hyatt,* 187 N.C. 113, 120 S.E. 830; *In re Will of Stocks, supra; In re*

*Broach's Will, supra; In re Rawlings' Will, supra; In re Will of Parker,* 165 N.C. 130, 80 S.E. 1057; *Stewart v. Stewart,* 155 N.C. 341, 71 S.E. 308; *Horah v. Knox,* 87 N.C. 483; *Bost v. Bost,* 87 N.C. 477; *Clary v. Clary,* 24 N.C. 78. Moreover, it was proper for these witnesses to detail observed facts about the decedent's conduct or language upon which their opinions were based. *In re Will of Tatum, supra; In re Will of Brown, supra; In re Staub's Will,* 172 N.C. 138, 90 S.E. 119.

. 4. The script propounded for probate was drawn by A.I. Ferree, a distinguished member of the Randolph County bar, who served as legal adviser to the decedent during the twenty years next preceding her death, and who was retained as an attorney for the propounder in the caveat proceeding. Counsel for the propounder became convinced that it was essential to the ends of justice for Mr. Ferree to testify in court in behalf of his client. As a consequence, Mr. Ferree left the trial of the caveat proceeding to other counsel, and took the stand as a witness for the propounder. As such, he expressed the opinion that the decedent was of sound mind at the time of the execution of the script, and detailed as a basis for his opinion communications made to him by the decedent while the relation of attorney and client subsisted between them. The caveators reserved exceptions to the admission of this evidence. It is obvious that the receipt of Mr. Ferree's testimony did not contravene the common law rule making confidential communications between attorney and client privileged communications. *Guy v. Bank,* 206 N.C. 322, 173 S.E. 600; *McNeill v. Thomas,* 203 N.C. 219, 165 S.E. 712; *Jones v. Marble Co.,* 137 N.C. 237, 49 S.E. 94; *Carey v. Carey,* 108 N.C. 267, 12 S.E. 1038; *Hughes v. Boone,* 102 N.C. 137, 9 S.E. 286; *Michael v. Foil,* 100 N.C. 178, 6 S.E. 264; 6 Am. S. R. 577. This is true because "it is generally considered that the rule of privilege does not apply in litigation, after the client's death, between parties, all of whom claim under the client; and so, where the controversy is to determine who shall take by succession the property of a deceased person and both parties claim under him, neither can set up a claim of privilege against the other as regards the communications of deceased with his attorney." 70 C.J., Witnesses, section 587. See, also, in this connection: 70 C.J., Witnesses, section 567, and Wigmore on Evidence (2nd Ed.), section 2329. The caveators insist, however, that Section 19 of Article X of the Rules and Regulations of the North Carolina State Bar renders a lawyer incompetent to testify for his client, and that the testimony of Mr. Ferree ought to have been excluded on this ground. The invalidity of this position is made manifest by a reading of this particular regulation, which is couched in this language: "When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument or the like, he should leave the trial of the case to other counsel. Except when essen-

tial to the ends of justice, a lawyer should avoid testifying in court in behalf of his client." This regulation expressly recognizes the rule that a lawyer is a competent witness for his client. *Brunswick County v. Woodside,* 31 N.C. 496; *Slocum v. Newby,* 5 N.C. 423. It merely prescribes a rule of professional conduct to be observed by the lawyer before he testifies in behalf of his client concerning things other than mere formal matters. Mr. Ferree obeyed both the letter and the spirit of the rule by withdrawing as counsel for the propounder in the caveat proceeding before becoming a witness in his behalf.

6. Counsel for the caveators put these unanswered questions to witnesses for the propounder on cross-examination: (1) "If the executors and lawyers can't tell in what manner she wanted to dispose of it, how do you suppose she had mentality sufficient to do it?" (2) "If you knew Annis Kemp represented or allowed another person to represent to the public that some of her property belonged to another person, would that change your opinion about her knowing the nature and extent of her property?" (3) "In your opinion, isn't the listing of personal property the act of a normal individual?" The trial judge sustained the objections of the propounder to these questions, and the caveators noted exceptions to these rulings. These questions sought to elicit the answers of the witnesses to argumentative statements presented to them by counsel for the caveators. As a consequence, they were properly excluded under the evidential rule that a question which is in the nature of a mere argument with a witness should not be allowed. 70 C.J., Witnesses, section 676.

7. The caveators assign as error the refusal of the trial judge to permit witnesses for the propounder to answer the following questions put to them by counsel for the caveators: (1) "Is there any public money you know of in that hospital?" (2) "Do you know where he is?" (3) "Was there any announcement made there whose property was being sold?" These assignments of error are untenable. The first and second questions were designed to elicit evidence wholly foreign to the issues in the caveat proceeding, and the witness to whom the third question was directed would have given this answer had he been allowed to reply: "I never heard any announcement . . . at all as to whose property it was."

This brings us to the exceptions to the charge, which occupies 47 pages of the record on appeal. The caveators assign as error several portions of the charge in which the trial judge inadvertently called the script "the will" and the decedent "the testatrix." Since the trial judge instructed the jurors in most emphatic language in other parts of the charge that they were "the sole judges of the facts" and that they were not to consider "anything the court may have said or done during the progress of this proceeding" as the expression of any opinion on the facts, we are satisfied that these trivial lapses of the judicial tongue did no injury to the cavea-

tors. *In re Will of McDowell,* 230 N.C. 259, 52 S.E. 2d 807. Exceptions 140, 141, and 142 cover portions of the charge in which the trial judge stated the contentions of the parties arising on the evidence. These exceptions are without value to the caveators because they did not call any supposed inaccuracies in them to the attention of the trial judge during the course of the trial and thus afford him an opportunity to make corrections before the proceeding was submitted to the jury. *S. v. Lambe,* 232 N.C. 570, 61 S.E. 2d 608. The remaining exceptions to the charge harmonize with approved precedents and require no elaboration.

The caveators have failed to show prejudicial error. In consequence, the judgment establishing the script in controversy as the last will of Annis S. Kemp must be upheld.

No error.

·PARKER, J., took no part in the consideration or decision of this case.